STATE of Missouri, Respondent,

v.

Michael P. VERNON, Appellant.

No. WD 71123.

Missouri Court of Appeals, Western District.

Feb. 22, 2011.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 29, 2011.

Application for Transfer Denied May 31, 2011.

Alexa I. Pearson, Columbia, MO, for appellant.

Shaun J. Mackelprang and James B. Farnsworth, Jefferson City, MO, for respondent.

Before Division Three: CYNTHIA L. MARTIN, Presiding Judge, JAMES E. WELSH, Judge and GARY D. WITT, Judge.

GARY D. WITT, Judge.

Michael Vernon ("Vernon") was convicted after a jury trial in the Circuit Court of Buchanan County of one count of possession of burglar's tools, a class D felony, in violation of Section 569.180.[1] On May 5, 2009, the jury recommended that Vernon be sentenced to a fine to be determined by the court but did not recommend incarceration. On June 2, 2009, the trial court sentenced Vernon to a fine in the sum of $500. Vernon now appeals. We affirm.

## STATEMENT OF FACTS[2]

Shortly after 1:30 a.m. on June 18, 2008, Jessica Holmes ("Holmes") was sitting on her front porch when she heard a "rustling" noise coming from a nearby yard. At first she assumed it was an animal, but then she heard the breaking of glass. Holmes could tell that the sound had come from the house at 104 South 15th Street (the "House"), which was located diagonally across the street from her porch. The House was unoccupied, and the owners lived out of state. Richard Withrow ("Withrow"), a friend of the owners, acted as caretaker and checked on the building periodically.

Holmes called 911 and reported that she had heard breaking glass and believed that someone was in the "abandoned" house on the corner. Holmes estimated that she called the police within a minute or so of hearing the glass break and that two or three minutes after her call she saw officers arrive at the House.

When the officers received the dispatch regarding the possible burglary in progress, they drove toward the House without activating their lights or sirens and parked a short distance away, hoping to avoid alerting any intruders that the police had arrived. The street light nearest the House was not working, so the surrounding area was very dark. The officers approached the House and established a perimeter.

On the west side of the House, the officers found a broken window. The glass had been broken out to make a hole large enough for a man to enter without difficulty.

Meanwhile, the officers on the southeast corner of the House spotted Vernon walking up the street, coming toward the House. Vernon was walking low, as if he were trying to avoid being seen, and crept toward the west side of the house. Vernon

---

1. All statutory citations are to RSMo 2000 as updated through the 2010 Cumulative Supplement, unless otherwise indicated.

2. The facts are stated in the light most favorable to the verdict. *State v. Rutter,* 93 S.W.3d 714, 720 (Mo. banc 2002).

walked right past the officers, failing to see them in the dark beside the House.

The officers announced themselves, and Vernon stopped, looked startled, and dropped the bag he was carrying. The end of a pry bar was sticking out of the bag. Vernon consented to a search of the bag, and the police found, in addition to the pry bar, a flashlight and a pipe cutter—the kind used for cutting copper pipe.[3] Officer Beene arrested Vernon because there was "damage" in the bathroom of the House, and the officer saw that Vernon had a pipe cutter. When the officers asked Vernon what he was doing, he answered that he was on his way home from a friend's house.

Vernon resided at 305 North 13th Street in property owned by the Calvary Chapel Church, where Vernon had been attending church for the previous two years. The church building was in need of certain repairs, including plumbing repairs, so that it could be brought up to code. Vernon agreed to make those repairs as part of his rent.

Reverend Charles Rhine ("Reverend") testified that he had known Vernon for about two years. The Reverend purchased several hundred dollars of plumbing and construction materials for Vernon, including copper pipes, copper caps, a compact tubing cutter, and other various tools. There was not a "pipe cutter" on any of the receipts. The Church paid for these items and would have paid for any materials that Vernon needed.

Richard Withrow was hired by the owners of the House to be the property's caretaker. He would go to the House approximately every thirty days. Sometimes he would just drive by, other times he would walk around the house. He had previously boarded up windows and doors on the home due to prior unrelated break-ins. In the past, lighting fixtures, posts from the stairway, and some of the door hardware had been stolen from the home.

On June 19th, during daylight hours, Withrow went to the House. He entered the home through the window. There was damage in the upstairs bathroom; he explained that the roof leaks, so there was a lot of plaster on the floor. In the first-floor bathroom, some plaster was on the sink, and there was a hole near the ceiling, exposing copper pipe. Above the sink in the downstairs bathroom, the ceiling was damaged, exposing copper pipes. He did not recall the damage in the bathrooms in the past and did not know when the damage occurred. He had not been inside of the house for at least two to six months before June 19th.

At the conclusion of the jury trial, Vernon was found guilty, and the jury recommended a fine to be determined by the court but no imprisonment. The court sentenced him to a $500 fine.

## Analysis

■ In Point One, Vernon argues that the evidence presented at trial was legally insufficient to prove beyond a reasonable doubt that he was guilty of the offense of possession of burglar's tools. He attacks the sufficiency of the evidence in two respects: (1) the State failed to prove that a pipe cutter is a burglar's tool; Vernon insists that it cannot be so classified because it is not used to assist in forcibly entering a building; and (2) the State failed to prove that he intended to use the tools to facilitate a burglary; Vernon contends that he had a lawful purpose for

---

3. At that time, the price of copper was high, and the police had responded to numerous incidents of people breaking into empty houses and stealing copper.

possessing the tools and that the State's theory was implausible.

■ When reviewing the sufficiency of evidence, the Court gives great deference to the trier of fact. *State v. Oliver*, 293 S.W.3d 437, 444 (Mo. banc 2009). "Appellate review 'is limited to a determination of whether there is sufficient evidence from which a reasonable juror might have found [Vernon] guilty beyond a reasonable doubt.'" *Id.* (quoting *State v. Chaney*, 967 S.W.2d 47, 52 (Mo. banc 1998)). "In applying this standard, 'the Court accepts as true all evidence favorable to the state, including all favorable inferences drawn from the evidence and disregards all evidence and inferences to the contrary.'" *Id.* (quoting *Chaney*, 967 S.W.2d at 52).

■ Section 569.180 requires proof that: (1) possession by the defendant of tools mentioned; (2) adaptability, design, or common use of the tools for committing or facilitating offenses involving forcible entry into premises; and (3) circumstances evincing an intent to use or employ, or allow the same to be used or employed, in the commission of an unlawful forcible entry into a building or inhabitable structure, or knowing that the same are intended to be used. *State v. Adkins*, 678 S.W.2d 855, 860 (Mo.App. W.D.1984). Due process requires the State to prove each element of a crime beyond a reasonable doubt. *State v. Bowman*, 311 S.W.3d 341, 343 (Mo.App. W.D.2010).

■ Vernon does not dispute that he possessed a flashlight, pry bar, and a pipe cutter satisfying the first element of the offense. Vernon's argument is that the pipe cutter does not meet the specifications to be deemed a burglar's tool and fails to fulfill the second element of the test.

■ In prosecuting the crime of possessing burglar's tools, the State need not show that tools were especially designed for use by burglars. "[I]t is ... immaterial that [tools] were also designed and adapted for honest and lawful uses." *State v. Hefflin*, 338 Mo. 236, 89 S.W.2d 938, 942–43 (1936). The second element is met so long as the tools are suitable for illegal purposes. *Id.* Vernon possessed various pry bars and wire cutters. "These tools while legitimate in and by themselves, can also be adapted for illegitimate use." *State v. Lake*, 686 S.W.2d 19, 21 (Mo.App. E.D.1984). Because a pipe cutter can be used to further the crime (i.e. breaking into the House to steal copper pipe), the designation of the pipe cutter as a burglar's tool comports with the facts and the law. The police testimony as to numerous incidents of people breaking into empty houses to steal copper because of its high price supports the classification of the pipe-cutter as a burglar's tool, and such a conclusion was not erroneous by the trial court. Vernon's claim that the pipe-cutter cannot be classified as a burglar's tool because it is not used to assist in forcibly entering a building is refuted by the holding in *Adkins*.

The second element for possession of burglar's tools is met.

The third element of the charge is that Vernon had intended to use the tools he possessed as burglar's tools, or he had knowledge that some other person intended to use the tools, to make forcible entry into a building or inhabitable structure or room thereof. *Lake*, 686 S.W.2d at 20; *Adkins*, 678 S.W.2d at 860. "[T]he defendant's intent is most often proved by circumstantial evidence and may be inferred from surrounding facts or the act itself." *State v. Oliver*, 293 S.W.3d 437, 446 (Mo. banc 2009).

■ Vernon claims that the evidence did not prove beyond a reasonable doubt

that he intended to use the tools to commit an unlawful entry into the house. "This court will not weigh the evidence. Evidence that supports the verdict is accepted as true, and the State is accorded all favorable inferences therefrom. Adverse evidence and inferences are disregarded." *State v. Martin,* 211 S.W.3d 648, 651 (Mo. App. W.D.2007) (internal citations omitted.) "The requisite mens rea is not shown by the mere possession of everyday tools which are not burglar's tools except in the hands of a burglar." *State v. Frentzel,* 717 S.W.2d 862, 867 (Mo.App. S.D. 1986).

Minutes after receiving a call in the middle of the night that a neighbor had heard someone break a window on the House, police captured Vernon along the House's south wall. Before being apprehended, Vernon was seen slouching and creeping along the House. Vernon claims that he was slouching in fear of being charged with trespassing, for which he had a prior conviction. When Vernon was apprehended, he had a bag which contained a pry bar, flashlight, and pipe-cutter, among other tools. He claimed that he was walking to a friend's house.

The evidence established that copper was selling for a high price and that there had been numerous incidents in the area involving break-ins where copper piping was stolen. From these facts, it can be easily inferred from the circumstances that at 1:45 a.m. Vernon's slouching and creeping along the side of the House, carrying a bag with a flashlight, pry-bar, and pipe cutter established the requisite intent to commit a burglary. This is supplemented by the fact that the House that had just been broken into and inside the copper pipe was exposed through a hole in the bathroom. While Vernon offers various legal reasons for his possession of the tools in question, the jury was free to draw reasonable inferences from all of the evidence and to believe or disbelieve Vernon's evidence in this regard. *State v. Williams,* 313 S.W.3d 656, 660 (Mo. banc 2010).

With the standard of appellate review set in *Martin* and *Williams,* the circumstances adhere to the requisite burglarious intent requirement for the possession of burglar's tools. Point One is denied.

In Point Two, Vernon claims that the evidence regarding damage to the downstairs bathroom inside the House denied Vernon his right to due process, a fair trial, and to be tried only for the charged offense. Vernon argues that the State used this evidence to infer that he had entered the home and had caused this damage without any evidence to tie him to the offense.

The Due Process Clause of the Fourteenth Amendment requires that criminal prosecutions comport with prevailing notions of fundamental fairness. *California v. Trombetta,* 467 U.S. 479, 485, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984). Evidence that tends to unnecessarily divert the jury's attention from the question before it should be excluded, and the probative value of evidence must not be outweighed by its tendency to create undue prejudice in the mind of the jury. *State v. Taylor,* 663 S.W.2d 235, 239–40 (Mo. banc 1984). Other crimes evidence may be allowed in limited circumstances if it tends to establish motive, intent, identity, a common scheme or plan, or absence of mistake or accident. *State v. Engleman,* 653 S.W.2d 198, 199 (Mo. banc 1983). A trial court "has broad discretion to admit or exclude evidence at trial." *State v. Rios,* 314 S.W.3d 414, 420 (Mo.App. W.D.2010). "A trial court's evidentiary rulings are reviewed for abuse of discretion." *State v. Davis,* 318 S.W.3d 618, 630 (Mo. banc 2010). An abuse of discretion occurs

where the ruling is clearly against the logic of the circumstances and is so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful, deliberate consideration. *Id.*

Vernon claims that Exhibits 7 and 9 (photos showing the damage and exposed copper pipes in the bathrooms of the House) should not have been admitted into evidence because the State could not show that the damage to the bathrooms occurred on June 18th, and that the damage was also related to an uncharged crime prejudicing Vernon. He relies on the facts that the caretaker of the House did not board up the House until sometime on the 19th of June and that anybody could have damaged the bathroom of the House between the time of his arrest and the observations of the caretaker the following day. The caretaker testified that when he entered the House on the 19th, he noticed some plaster on the sink and a hole near the ceiling of the downstairs bathroom. The relevant question at hand is whether the evidence of the damages to the bathrooms prejudiced Vernon, thus violating his due process rights.

Vernon argues that because he was not actually seen entering or exiting the House that this evidence was improperly admitted. He relies on *State v. Strickland*, 530 S.W.2d 736, 736 (Mo.App.1975), where the State presented evidence that the home next door to the victim had also been burglarized. A tire iron had been found in the alley near the buildings that fit the marks on the neighbor's door, which were similar to marks on the victim's door. *Id.* at 737. However, no evidence linked Strickland to the other crime. *Id.* The court ruled that evidence of separate and distinct crimes from that charged to a defendant are generally inadmissible, and since the State could not connect Strickland to the other crime, the Court held

that the evidence was irrelevant and should have been excluded. *Id.* The *Strickland* case is not analogous to the case at bar.

In this case, Vernon was caught walking in the same yard where an alleged break-in occurred at 1:45 a.m. When confronted by police, Vernon was suspiciously slouching and creeping along the side of the House with a bag of tools, which included a pry-bar, flashlight, and pipe-cutter. The next day, the caretaker of the house visited the house and discovered the damage to the downstairs bathroom, which he had never noticed before. The damage included a hole in the wall that exposed copper piping and a broken window. The damage to the house, which was observed by the caretaker the next day, corresponds with the tools that were in the possession of Vernon. Vernon's argument that anybody could have broken into the house between the time of arrest and the observations of the caretaker because it was not boarded up that night is meritless. The observations by the caretaker happened the next day. Vernon's argument goes to the weight of the evidence, not the admissibility.

Missouri courts recognize that exceptions exist " 'for the admission of evidence of uncharged crimes that are part of the circumstances or sequence of events surrounding the offense charged.' " *State v. Slaughter*, 316 S.W.3d 400, 403 (Mo.App. W.D.2010) (quoting *State v. Kelley*, 943 S.W.2d 354, 356–57 (Mo.App.1997)). "[E]vidence need not be free from doubt to be admissible"—inconsistencies or gaps in the evidence go to the *weight* of the evidence. *Zempel v. Slater*, 182 S.W.3d 609, 615 (Mo.App. E.D.2005). Vernon's argument that the evidence of the damage to the House's bathroom should be inadmissible is hollow. The fact that Vernon was not seen coming in or out of the House

goes to the *weight* of the evidence presented, which is determined by a jury. The jury in this case found that the circumstantial evidence was sufficient to establish that Vernon did have the *intent* use the tools to commit a burglary; he was not charged with the *actual* crime of burglary of the House. The evidence of the damage to the House was used to establish the requisite *intent* necessary to meet the third element of the crime of possession of burglar's tools.

Point Two is denied.

### Conclusion

The judgment of the circuit court is hereby affirmed.

All concur.