**STATE of Missouri, Respondent,**

v.

**Randall S. FORD, Appellant.**

**No. WD 74099.**

Missouri Court of Appeals, Western District.

May 29, 2012.

Ruth B. Sanders, Kansas City, MO, for appellant.

Shaun J. Mackelprang and Jennifer A. Wideman, Jefferson City, MO, for respondent.

Before Division Three: THOMAS H. NEWTON, Presiding Judge, JAMES M. SMART, JR., Judge and GARY D. WITT, Judge.

GARY D. WITT, Judge.

Randall S. Ford appeals his convictions in the Circuit Court of Jackson County for burglary in the second degree, section 569.170,[1] and possession of burglar's tools, section 569.180. We affirm.

### Factual Background

Randall Ford ("Ford") was arrested in the basement of Stein and McClure Funeral Home ("Funeral Home") early in the morning of June 16, 2010. The State alleged that Ford was responsible for the burglary of the Funeral Home and a Jiffy Lube business next door. The State charged Ford with five separate offenses as follows: two counts of burglary in the second degree, one as to each location, section 569.170, two counts of stealing, one from each location, section 570.030, and one count of possession of burglar's tools, section 569.180. Following a jury trial, the jury convicted Ford of Count III, burglary of the Funeral Home, and Count V, possession of burglar's tools. The jury acquit-

ted Ford with respect to the remaining three counts, one count of stealing from each location and the burglary of the Jiffy Lube. Ford was sentenced to four years imprisonment and now appeals. The facts elicited at trial in a light most favorable to the verdict are set forth below.

On the morning of June 16, 2010, the burglar alarms at both Funeral Home and Jiffy Lube were tripped. The alarm at the Jiffy Lube was tripped at 2:00 a.m. and again at 3:45 a.m. The alarm at the Funeral Home was tripped at 3:00 a.m. and again at 6:00 a.m. The police drove by the Funeral Home around 3:00 a.m. in response to a call from the manager, Jerry Post ("Post") who had received notice of the tripped alarm. The police did not see anything suspicious at that time. Post received notice of the second tripped alarm while he was en route to work that morning. Post arrived at the Funeral Home and noticed that the fuse box was open. He did not hear the alarm sound activating but he "heard noises like somebody might be dropping things or milling about." Post noticed things were strewn about the floor in the office and electronic equipment was on the floor. He then called police who arrived five to six minutes later.

Four officers were dispatched to the Funeral Home around 7:20 a.m. It was observed that a basement window was broken, so a perimeter was created around the business until other officers arrived to search the building. Officer Dave Edwards of the Kansas City Police Department K–9 Unit arrived shortly thereafter to search the Funeral Home. After announcing his and the dog's presence and receiving no response, officers and the dog searched the Funeral Home. They went to the basement and searched the furnace

1. All statutory citations are to RSMo 2000 as updated through the 2011 Cumulative Sup- plement, unless otherwise indicated.

room; they observed the broken window but nothing else appeared out of order. The officers continued to search the remaining levels of the Funeral Home. They observed that some of the offices looked like they had been "ransacked," things were moved around, and wires were cut. File cabinets were tipped over, trash cans were dumped out and computer equipment had been moved and stacked up. There was also a cart near the equipment that could be used to transport it outside.

The officer K–9 unit returned to the basement after checking the rest of the Funeral Home. They returned to the furnace room when the dog indicated by barking at the furnace room door. The officers and dog entered the furnace room and the dog located and bit Ford who was hiding between the wall and the furnace. Between the first time the officers had been in the furnace room and when they returned, the door to the furnace had been removed and there was computer equipment and a black backpack lying next to the furnace. Ford was found wearing only shorts; he had no shoes or shirt. Ford told officers that his name was "Bradley Hillebrenner."

The black backpack found near Ford contained pliers, a laptop computer, checkbooks belonging to the Funeral Home and a Kansas driver's license with the name "Bradley Hillebrenner." Photographs were taken at the crime scene including, Exhibits 40 and 41, which showed the contents of the backpack including; a cash box with money and keys in it, two screwdrivers, the Kansas driver's license and some electronics associated with the Funeral Home's phone or intercom system.

At trial, Ford testified that he did not enter the Funeral Home to steal anything; rather, he testified that had been forced to leave the house of a girl in great haste, when her boyfriend arrived to find him

there with her. He did not have a regular place to live at this time. He saw the window to the basement of the Funeral Home was open. He was tired and he was worried about being seen by police walking around in only a pair of shorts, so he decided it would be a better idea to crawl into the Funeral Home basement and sleep for a couple of hours. He claimed he woke up when the police dog bit him and he never told police his name was "Bradley Hillebrenner."

The jury convicted Ford of Count III, burglary in the second degree regarding the Funeral Home, and Count V, possession of burglar's tools. The jury acquitted him of the burglary regarding the Jiffy Lube and both counts of stealing one from the Jiffy Lube and one from the Funeral Home. The court imposed concurrent sentences of four years imprisonment for each count for which he was convicted.

## Standard of Review

Both points on appeal challenge the sufficiency of the evidence to support Ford's conviction.

"This Court's review of a claim of insufficient evidence is limited to determining whether the evidence is sufficient to persuade any reasonable juror as to the element of a crime beyond a reasonable doubt." *State v. Rousan*, 961 S.W.2d 831, 841 (Mo. banc 1998). In making this determination, we "accept[ ] as true all of the evidence favorable to the state, including all favorable inferences drawn from the evidence[,] and disregard[ ] all evidence and inferences to the contrary." *State v. Grim*, 854 S.W.2d 403, 405 (Mo. banc 1993) (quoting *State v. Dulany*, 781 S.W.2d 52, 55 (Mo. banc 1989)).

*State v. McCabe*, 345 S.W.3d 311, 314 (Mo. App. W.D.2011).

## Analysis

In Point One, Ford argues the trial court erred in overruling his motion for judgment of acquittal at the close of all the evidence as to Count III, burglary in the second degree regarding the Funeral Home, because the State's evidence was insufficient to support a finding of guilt beyond a reasonable doubt for burglary in the second degree in that a reasonable jury, having acquitted Ford of stealing from the Funeral Home, could not have also found beyond a reasonable doubt that he entered the Funeral Home for the purpose of stealing.[2]

A person commits the crime of burglary in the second degree when "he knowingly enters unlawfully [...] in a building or inhabitable structure for the purpose of committing a crime therein." Section 569.170. The State must prove every element of a criminal offense beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 361–64, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). On appeal, Ford concedes there was sufficient evidence to find that he knowingly entered the Funeral Home unlawfully, as he admitted as much at trial. Ford argues, however, that there was not sufficient evidence that he entered the Funeral Home "for the purpose of committing a crime therein." Specifically, the State charged Ford with entering the Funeral Home "for the purpose of committing theft therein." Ford argues that the jury's verdict convicting him of entering the Funeral Home with the purpose of stealing from the Funeral Home in Count III was inconsistent with its acquittal on Count IV for stealing from the Funeral Home.

"This court's focus in determining whether two verdicts are inconsistent is to ascertain 'whether the offense of which the defendant was found not guilty requires proof of an element unique to that crime and distinct from the elements of the offense of which defendant was found guilty.'" *State v. Haslar*, 887 S.W.2d 610, 614 (Mo.App. W.D.1994) (quoting *State v. Dominique*, 619 S.W.2d 782, 785 (Mo.App. 1981)). "If the offense for which the defendant was acquitted requires proof of a unique element, distinct from the elements of the crime for which he was found guilty, the verdicts cannot be inconsistent." *Flemons*, 144 S.W.3d 877, 882 (Mo.App. W.D.2004) (citing *State v. Avila*, 866 S.W.2d 500, 501 (Mo.App. E.D.1993)).

Ford was acquitted of stealing and convicted of second degree burglary. "A person commits the crime of stealing if he or she appropriates property or services of another with the purpose to deprive him or her thereof, either without his or her consent or by means of deceit or coercion." Section 570.030. Burglary requires a showing that the person knowingly entered unlawfully in a building or inhabitable structure with the purpose of committing a crime therein. Section 569.170. Accordingly, a cursory evaluation of the respective crimes reveals that "... second-degree burglary and stealing involve different elements and that neither of these crimes is dependent on the other." *State v. Gibbs*, 306 S.W.3d 178, 181 (Mo.App. E.D.2010) (quoting *Haslar*, 887 S.W.2d at 614). As stated above, since the crime of stealing involves a distinct element from second degree burglary, then the "verdicts *cannot* be inconsistent." *Flemons*, 144 S.W.3d at 882 (emphasis added).

---

**2.** Ford claims this violated his rights to due process and a fair trial, as guaranteed by the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Article I, sections 10 and 18(a) of the Missouri Constitution.

██ Ford recognizes that the verdicts are not necessarily inconsistent but then argues that in this case the verdicts must be inconsistent because "the jury must have believed that Mr. Ford was not involved in moving the equipment around, because there was no other basis to acquit him of the Count IV of stealing." This argument must fail. First, as elaborated above, the verdicts are not inconsistent and this Court will not presume to delve into the collective mind of the jury and create an inconsistency where one need not exist. Second, "when a defendant is tried on a multiple count charge involving crimes with different elements, the jury's verdict does not have to be logically consistent." *State v. Owens*, 270 S.W.3d 533, 540 (Mo.App. W.D.2008) (quoting *Flemons*, 144 S.W.3d at 882). So long as the charge for which he is convicted is supported by sufficient evidence, logical inconsistency is not a ground for rejecting an individual verdict. *Id.* at 539–40. It does not matter whether convicting Ford of burglary and acquitting him of stealing is logical or illogical, so long as the crime for which he was convicted is supported by the evidence. Third, the verdict is not even necessarily illogical. Ford correctly argues that he could have been convicted of stealing if the jury thought that he was the one who moved the items in the Funeral Home around because the statutory definition of "appropriation" includes such conduct. *See* section 570.010(2). However, the fact that the jury did not convict him of stealing the items does not mean that the jury did not believe he entered the Funeral Home with the purpose of committing theft therein. The jury was instructed for Count III, the burglary in the second degree charge that it had to find that Ford "took" the equipment. The jury may have decided that Ford did not actually take any items as he was found inside the Funeral Home and all of the items were still inside the building. While legally, based on such a finding, the jury could have convicted him of the offense, they are not required to do so. Regardless, it is unnecessary to speculate on the jury's decision as the verdicts the jury rendered were not inconsistent.

██ Sufficient evidence was adduced at trial to support the jury's conviction of burglary in the second degree from the Funeral Home and, specifically, that Ford entered the Funeral Home to commit a crime therein. The evidence showed that Ford was found hiding behind a furnace in the basement of the Funeral Home in the early hours of the morning after police were called to search the Funeral Home because the alarm system had been tripped multiple times throughout the night. There was a broken window leading into the basement. A black bag was found within Ford's reach that contained valuable property which had been moved from upstairs. Ford gave law enforcement a false name, which was the same name as appeared on a driver's license in the black bag and he did not have permission to be in the Funeral Home. This evidence is more than sufficient to support the jury's finding that Ford committed burglary in the second degree.

Point One is denied.

██ In Point Two, Ford argues the trial court erred in overruling his motion for judgment of acquittal at the close of all the evidence as to Count V, possession of burglar's tools, because the State's evidence was insufficient to support a finding of guilt beyond a reasonable doubt for possession of burglar's tools in that a reasonable jury could not have found beyond a reasonable doubt that Ford possessed a screwdriver *and* pliers, that he possessed them with the intent of using them in a burglary, or that the tools were adapted or

designed or commonly used for committing or facilitating offenses involving forcible entry into premises.[3]

Section 569.180 requires proof that: (1) possession by the defendant of tools mentioned; (2) adaptability, design, or common use of the tools for committing or facilitating offenses involving forcible entry into premises; and (3) circumstances evincing an intent to use or employ, or allow the same to be used or employed, in the commission of an unlawful forcible entry into a building or inhabitable structure, or knowing that the same are intended to be used. *State v. Adkins*, 678 S.W.2d 855, 860 (Mo.App. W.D.1984).

*State v. Vernon*, 337 S.W.3d 88, 92 (Mo. App. W.D.2011). Again, the State must prove every element of the offense beyond a reasonable doubt. *State v. Bowman*, 311 S.W.3d 341, 343 (Mo.App. W.D.2010). The State charged Ford's "possession" of a screwdriver and pliers as burglar's tools. The verdict director given to the jury required them to find that "defendant possessed a screwdriver *and* pliers." (Emphasis added.)

Ford argues first that State failed to prove that he possessed a screwdriver. At trial, testimony was elicited regarding the black bag found within Ford's reach, which possessed various items removed from other areas of the Funeral Home and a pair of pliers. No testimony at trial specifically referred to a screwdriver as being found in the black bag. State's Exhibits 40 and 41 were admitted into evidence and testimony established that they were photographs of the contents of the black bag emptied out onto the floor. Only State Exhibit 41 was provided to this Court on appeal.[4] However, Ford does not dispute that the photographs showed multiple screwdrivers. Ford argues that because the officer testifying regarding the photographs identified specifically many of the items in the photographs as being contained in the black bag, that because he did not testify that the screwdrivers in the photographs came from the black bag, that there was insufficient evidence that Ford possessed the screwdrivers. Further Ford argues that because the verdict director required the jury to find that he possessed pliers *and* a screwdriver, that there is insufficient evidence to support his conviction. Granting the State all reasonable inferences, the officer identifying the photographs testified that they were photographs of the contents of the black bag. Even though he did not mention the screwdrivers specifically, based on his testimony the jury could reasonably find that the screwdrivers in the photographs came from the black bag. Ford concedes that there was sufficient evidence to support the jury's finding that he possessed the pliers that appear in the same photograph. Based on the testimony that the photographs were of the contents of the black bag and Ford's concession that the screwdrivers were in the photographs, this was sufficient evidence from which the jury could reasonably find that the screwdrivers were located in the black bag and were therefore possessed by Ford.

 Ford next argues that there was no evidence from which the jury could have found that pliers and screwdrivers were adapted, designed or commonly used

---

3. Ford claims this violated his rights to due process and a fair trial, as guaranteed by the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Article I, sections 10 and 18(a) of the Missouri Constitution.

4. The State claims on appeal it does not have access to State's Exhibit 40.

for burglaries and the purpose of the tools is a required element of the offense.

In prosecuting the crime of possessing burglar's tools, the State need not show that tools were especially designed for use by burglars. "[I]t is ... immaterial that [tools] were also designed and adapted for honest and lawful uses." *State v. Hefflin,* 338 Mo. 236, 89 S.W.2d 938, 942–43 (1936). The second element is met so long as the tools are suitable for illegal purposes. *Id.*

*Vernon,* 337 S.W.3d at 92. Ford had in his possession both pliers and screwdrivers. While these tools may be legitimate in and of themselves, they can be used for illegitimate uses. *Id.* (quoting *State v. Lake,* 686 S.W.2d 19, 21 (Mo.App. E.D.1984)). The evidence showed that someone had unlawfully entered the Funeral Home, broke a basement window, de-activated the alarm, opened a fuse box, dismantled and collected numerous pieces of computer equipment, cut wires, and removed the furnace door. As this Court must view the evidence in a light most favorable to the State and grant the State all reasonable inferences, we find there was sufficient evidence, given the nature of the burglary and the tools found, to support a finding that the tools were suitable for illegal purposes. *See State v. Gilmore,* 665 S.W.2d 25, 30 (Mo.App. E.D.1984) (citing *State v. Lewis,* 599 S.W.2d 94, 98[10] (Mo.App. W.D.1980)). *See State v. Gully,* 716 S.W.2d 892 (Mo.App. S.D.1986) (defendant convicted of possessing a screwdriver for use as a burglar's tool.)

Ford's final argument under this Point is that there was no evidence presented that Ford possessed the tools with the purpose of unlawfully entering a building or a room. The final element of the charge requires the State to prove "circumstances evincing an intent to use or employ, or allow the same to be used or employed, in the commission of an unlawful forcible entry into a building or inhabitable structure, or knowing that the same are intended to be used." *Vernon,* 337 S.W.3d at 92 (citing *State v. Adkins,* 678 S.W.2d 855, 860 (Mo.App. W.D.1984)). "[T]he defendant's intent is most often proved by circumstantial evidence and may be inferred from surrounding facts or the act itself." *Id.* (quoting *State v. Oliver,* 293 S.W.3d 437, 446 (Mo. banc 2009)).

The circumstances in which Ford was found are sufficient to prove Ford's intent to use the pliers and screwdrivers as burglars' tools. The items were found in a black backpack near Ford where he had secreted himself behind a furnace in the basement of the Funeral Home. The Funeral Home had been broken into that night and had been ransacked as described *supra.* Ford was the only person found in the Funeral Home and his story as to why he was located in the Funeral Home could be generously described as suspect. Ford admitted he unlawfully entered the Funeral Home through a window he described as "open" but, as the evidence proved at trial, was in fact broken. The circumstantial evidence and inferences from the facts proved at trial support the finding that Ford had the intent to use the tools found in his possession to commit an unlawful forcible entry.

Point Two is denied.

## Conclusion

The judgment of the Circuit Court is affirmed.

All concur.