

# In the
# Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Respondent, | ) | WD81706 |
| | ) | |
| v. | ) | OPINION FILED: |
| | ) | November 26, 2019 |
| JOHN C. YOUNG, JR., | ) | |
| | ) | |
| Appellant. | ) | |

**Appeal from the Circuit Court of Jackson County, Missouri**
The Honorable Bryan Round, Judge

Before Division Three:  Alok Ahuja, Presiding Judge, Gary D. Witt, Judge and Anthony
Rex Gabbert, Judge

Appellant John Young, Jr. ("Young") appeals his conviction of multiple offenses by

the Jackson County Circuit Court following a jury trial.  Young alleges three points of error

on appeal: (1) the court erred in accepting the jury's verdicts as to the lesser included

offense of involuntary manslaughter, together with the guilty verdicts for unlawful use of

a weapon and armed criminal action, because the verdicts were inconsistent; (2) the court

erred in entering convictions for both unlawful use of a weapon and armed criminal action,

because this constituted double jeopardy; and (3) the court erred in refusing to submit

Young's proposed instruction regarding self-defense under the castle doctrine's provision regarding protection of vehicles. We affirm.

## Factual and Procedural Background[1]

This case arises from a "road rage" incident with tragic consequences. On May 25, 2017, Christopher Hutson ("Hutson") and Tailor Monroe ("Monroe") were driving home to Lee's Summit from Overland Park, Kansas, on Interstate 435, in a gold Chevrolet Impala. Due to traffic backups caused by an accident ahead, the couple exited early onto State Line Road. The couple did not know how to proceed so they used a GPS program on Monroe's cell phone and were driving slowly. The windows of the Impala were rolled down and Hutson was driving. Hutson stopped at the traffic signal at 103rd Street and Wornall Road in the left turn lane. Young, driving a blue Chevrolet Cruze, stopped at the light in the lane to the right of Hutson, on the passenger side, and yelled at Hutson to "learn how to f***ing drive." Hutson responded by throwing a coffee or soda cup out of his car towards Young's car. Young proceeded straight through the light on 103rd Street. Hutson also yelled: "What the f*** did this nig*** just say?" although Monroe testified that Young's car was already gone at that point.

Hutson exited the left turn lane and also proceeded straight on 103rd Street. He started following Young, "riding his bumper," but Monroe testified that they did not come into contact with Young's car. According to Monroe, both vehicles were going "pretty fast." Monroe cautioned Hutson not to follow so closely because Monroe was pregnant

[1] On appeal from a jury-tried case, we view the facts in the light most favorable to the jury's verdict. *State v. Peal*, 393 S.W.3d 621, 623 n.1 (Mo. App. W.D. 2013).

and feared getting hurt. Monroe testified that after the warning, Hutson then slowed his car and stopped following Young.

Both cars turned off of 103rd Street onto Holmes. As Young approached the ramp to get onto Interstate 435, Hutson pulled up next to Young's car to "say what he had to say." Monroe saw that Young had a gun in his hand and turned to tell Hutson about the gun. At that point, Young fired into Hutson's vehicle, striking both Monroe and Hutson in the head. The shot grazed Monroe's head but entered Hutson's skull going through his brain but not exiting. Young continued onto Interstate 435.

Hutson's car rolled across the center line, coming to a rest in front of the exit ramp for traffic coming off of Interstate 435 onto Holmes blocking traffic. Hutson eventually died from the gunshot wound.

Young did not stop or call authorities. Instead, he returned to his workplace making no mention of the events that just transpired. It wasn't until early the next week that Young confided in a family friend, Robert Biagioli ("Biagioli"), about the shooting. Young told Biagioli that he felt like he was defending his life when he shot into Hutson's car because Hutson had aimed a gun at him. On Wednesday evening, Biagioli showed Young news footage of the shooting which included photos of Young's car, taken from surveillance cameras in the area. Biagioli advised Young to contact an attorney and go to the police. The next day, Young asked Biagioli if he could keep some personal belongings at Biagioli's house. Young placed a black bag in Biagioli's basement. At a later time, Young showed him that there was a gun in the bag and told him it was the gun from the shooting. Biagioli

3

told Young he needed to obtain counsel and turn himself into authorities. Young stayed the night at Biagioli's house.

The next morning, police arrested Young after locating him with vehicle tracker information provided by Young's employer. During a search of Young's residence, police found a box and receipt for the gun that Young had left at Biagioli's house. On June 8, Biagioli turned the gun over to police. Ballistics testing established that the bullet that killed Hutson was fired from the gun recovered from Biagioli.

Young was charged with: Count I - second degree felony murder (victim Hutson) under section 565.021[2], with the underlying felony being unlawful use of a weapon charged in Count III, Count II - armed criminal action under section 571.015 related to Count I, Count III - unlawful use of a weapon under section 571.030, Count IV - armed criminal action under section 571.015 related to count III, Count V - assault in the second degree (victim Monroe) under section 565.052, Count VI - armed criminal action under 571.015 using the related count V, Count VII - failure to report a shooting under 577.068, Count VIII - tampering with physical evidence under 575.100.

A jury trial was held on February 20, 2018. Young presented no evidence in his defense, but was able to elicit evidence regarding his claim of self-defense through Biagioli's testimony. The jury found Young guilty on Count I of the lesser-included offense of first degree involuntary manslaughter, section 565.024, guilty on Count II of armed criminal action associated with Count I, guilty on Count III of unlawful use a weapon,

---

[2] All statutory references are to RSMo 2016 as updated through January 1, 2017.

4

guilty on Count IV of armed criminal action related to Count III, guilty on Count V of the lesser included offense of fourth degree assault, section 565.056, not guilty of Count VI of armed criminal action related to Count V, not guilty of Count VI of failure to report a shooting and guilty of Count VIII of tampering with physical evidence.

The court sentenced him to concurrent terms of ten years' imprisonment for involuntary manslaughter and its related count of armed criminal action, concurrent terms of twenty years' imprisonment for unlawful use of a weapon and its related count of armed criminal action, a concurrent term of one year imprisonment for fourth degree assault, and a consecutive term of four years' imprisonment for tampering with physical evidence, resulting in a total sentence of 24 years' imprisonment. This appeal followed.

## I.

Young's first point on appeal alleges that the circuit court erred in accepting the jury's verdict as to unlawful use of a weapon, Count III, and armed criminal action, Count IV, because they were inconsistent with the jury's "not guilty verdict" on murder in the second degree, the greatest offense instructed under Count I. According to Young, because the language in the instruction for murder in the second degree and unlawful use of a weapon were "nearly identical," "the state's failure to prove all of the elements of the felony murder charge meant that the jury also necessarily found that the state had failed to prove each of the elements of unlawful use of weapon." We disagree.

### Standard of Review

A claim of inconsistent verdicts requires an appropriate objection to be preserved for appeal. *State v. Forrest*, 183 S.W.3d 218, 230 (Mo. banc 2006). To be preserved, the

objection must be raised before the jury is discharged. *State v. Flemons*, 144 S.W.3d 877, 881 (Mo. App. W.D. 2004). As no objection was raised in this case, we may only review for plain error. "To warrant relief under plain error review, an appellant must show 'manifest prejudice affecting his substantial rights.'" *State v. Bratton*, 92 S.W.3d 275, 277 (Mo. App. W.D. 2002) (quoting *State v. Parker*, 856 S.W.2d 331, 332 (Mo. banc 1993)). Review is only warranted where a claim on its face "establishes substantial grounds for believing that manifest injustice or miscarriage of justice has occurred." *Id.* "Not all prejudicial error can be deemed plain error." *Id.*

**Discussion**

The State charged Young with murder in the second degree, however, under Count I, the jury was also instructed as to the lesser included offenses of voluntary manslaughter and involuntary manslaughter. As to Count I, the jury ultimately returned a verdict of guilty of involuntary manslaughter. Young argues that the jury's verdict on Count I constituted an affirmative finding of not guilty as to murder in the second degree and this was inconsistent with findings of guilt as to Counts III and IV which contained similar elements.

The jury instruction for Count I, murder in the second degree provided:

> As to Count I, if you find and believe from the evidence beyond a reasonable doubt:
>
> > First, that defendant *committed unlawful use of a weapon*, as submitted in Instruction No. 19, and
> >
> > Second, that the defendant caused the death of Christopher Hutson by shooting him, and

6

Third, that Christopher Hutson was killed as a result of the perpetration of that unlawful use of a weapon,

then you will find the defendant guilty under Count I of murder in the second degree.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of murder in the second degree.

(emphasis added). On Count III, unlawful use of a weapon, the jury was instructed:

As to Count III, if you find and believe from the evidence beyond a reasonable doubt:

First, that on or about May 25, 2017, in the County of Jackson, State of Missouri, the defendant knowingly discharged a firearm from a blue Chevrolet Cruz[e], and

Second, that as a result of the above described conduct Christopher Hutson suffered injury or death,

Third, the defendant did not act in lawful self-defense as submitted in Instruction No. 13

then you will find the defendant guilty under Count III of unlawful use of a weapon.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

In turn, Count IV, armed criminal action, is reliant on a finding of guilt as to the unlawful use of a weapon:

As to Count IV, if you find and believe from the evidence beyond a reasonable doubt:

First, that defendant committed the offense of unlawful use of a weapon, as submitted in Instruction No. 19, and

7

Second, that defendant committed that offense by, with or through, the knowing use, assistance or aid of a deadly weapon, and

Third, the defendant did not act in lawful self-defense as submitted in Instruction No. 13

then you will find the defendant guilty under Count IV of armed criminal action.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

The charge of felony murder in the second degree, as charged and instructed in this matter required the jury to find that Hutson was killed as a result of the unlawful use of a weapon. However, involuntary manslaughter, which the jury determined Young was guilty of, did not require such a finding. Young posits that by finding Young guilty of involuntary manslaughter, the jury had to have first affirmatively acquitted him of murder in the second degree. The key difference between the instruction for felony murder in the second degree and the instruction for involuntary manslaughter was the element that Hutson's death resulted from unlawful use of weapon. Young argues that because the jury acquitted him of murder in the second degree, the jury necessarily acquitted him of both the unlawful use of a weapon charge and the armed criminal action charge that was based on the unlawful use of a weapon charge. Therefore, Young asserts that the jury's decision regarding the instructed offenses charged under Count I was inconsistent with its findings of guilt as to Count III and IV. Thus, Young argues that the finding of guilty as to Counts III and IV must be reversed.

8

This argument both misconstrues the nature of a finding by a jury of guilt for a lesser included offense and also the deference to which we give jury verdicts. As the State notes, Missouri's instruction for murder in the second degree is not "acquittal first." *State v. Johnson*, 284 S.W.3d 561, 574 (Mo. banc 2009). Missouri's instructions allow for the jury to consider a lesser offense if it does "not find the defendant guilty of the greater offense." *Id.* There are multiple reasons why this may happen: the jury is deadlocked on guilt as to the greater offense, it may be the result of compromise, or an exercise of lenity by the jury.

Although the jury considered the greater offense of murder in the second degree, it was not required to unanimously find that the State failed to prove all of the elements of that charge beyond a reasonable doubt and "acquit" Young of that offense before it could consider the lesser-included offenses of voluntary and involuntary manslaughter. Instead, the jury instructions stated that "if you do not find the defendant guilty of" the preceding greater offense, "you must consider whether he is guilty of" the lesser offense. Thus, Young is incorrect in his premise that the verdicts were inconsistent based on his argument that the jury had affirmatively found him not guilty or acquitted him of unlawfully using a deadly weapon in failing to find him guilty of felony murder under Count I. Therefore, it was not inconsistent for the jury to find him guilty of that offense in Count III and additionally Count IV which relied on the conviction under Count III. To the extent this appears logically inconsistent, our courts have accepted such a result as manifestations of jury members reaching a compromise or exercising lenity. *See Bratton*, 92 S.W.3d at 278.

In this case, the record reflects that the jury twice informed the court that it was unable to reach a unanimous verdict as to all counts. It was only after the "hammer

9

instruction"[3] was read to the jury that it reached a unanimous verdict as to each count. It is reasonable to presume that the members of the jury exercised some compromise and possibly lenity in reaching its unanimous verdict for involuntary manslaughter and any perceived inconsistency was not the result of an affirmative finding by the jury that the State failed to prove the element of unlawful use of a weapon.

This Court in *Bratton* addressed an almost identical scenario. In *Bratton*, the defendant was charged with robbery in the first degree and armed criminal action. *Id.* at 276. The verdict director for robbery in the first degree required the jury to find that "in the course of taking the property, the defendant or another person used or threatened the immediate use of a dangerous instrument against [Victim]." *Id.* Similarly, the verdict director for armed criminal action required the jury to find that "the defendant . . . committed that offense by or with or through the use, or assistance or aid of a dangerous instrument." *Id.* The jury ultimately returned a verdict that found the defendant guilty of robbery in the first degree, but not guilty of armed criminal action. *Id.* The trial court noted that "the verdicts were 'somewhat intellectually inconsistent'" but the defense did not object to receiving the verdict. *Id.* As no objection to the verdict was raised below, this Court reviewed the claim for plain error. *Id.* at 277. Ultimately, this Court accepted the State's argument that "[a]n inconsistent verdict among several charges does not require reversal if there is sufficient evidence to support the finding of guilt on each charge." *Id.* at 278. The Court held that "[t]here was sufficient evidence to support convictions on both

---

[3] MAI-CR 4th 412.10.

10

counts, but apparently the jury decided to exercise some lenity as to Count II [armed criminal action]. We find no prejudice to Bratton's rights." *Id.*

In reaching its decision, the Court in *Bratton* discussed the Missouri Supreme Court case of *State v. Peters*, 855 S.W.2d 345 (Mo. banc 1993). In *Peters*, the jury was instructed on first degree assault, second degree assault, and dependent counts of armed criminal action for each type of assault. *Id.* at 347. The jury initially returned verdicts of not guilty of assault, but guilty of the dependent armed criminal action. *Id.* The trial court refused to accept the inconsistent verdicts and sent the jury back for further deliberations; the jury ultimately returned a verdict of guilty for second degree assault and armed criminal action. *Id.* The Supreme Court held that the trial court did not err in sending the jury back for further deliberations. *Id.* at 349. Thus, this Court in *Bratton* noted that it might not have been error for the trial court to have sent the verdicts back for further deliberations but that did not necessitate a finding that failing to do so constituted error. *Bratton*, 92 S.W.3d at 277-78. The court noted that, if sent back, the jury in *Bratton* was just as likely to return a verdict of guilt as to both as it was to return with acquittal on both.[4] Further, an important

---

[4] It is worth noting that this is the same approach taken by the Supreme Court of the United States. In both *Dunn v. United States*, 284 U.S. 390 (1932), overruled on other grounds by *Sealfon v. United States*, 332 U.S. 575 (1948), and *United States v. Powell*, 469 U.S. 57 (1984), the Court declined to overturn what appeared to be logically inconsistent jury verdicts. In both cases the Court noted that consistency in a jury verdict is not necessary. *Dunn*, 284 U.S. at 393-94; *Powell*, 469 U.S. at 65. Instead, "[w]e interpret the acquittal as no more than [the jury's] assumption of a power which they had no right to exercise, but to which they were disposed through lenity." *Dunn* 284 U.S. at 393. The Supreme Court specifically noted that "the possibility that the inconsistent verdicts may favor the criminal defendant as well as the Government militates against review of such convictions at the defendant's behest." *Powell*, 469 U.S. at 65. Additionally, criminal defendants are already "afforded protection against jury irrationality or error by the independent review of the sufficiency of the evidence undertaken by the trial and appellate courts." *Id.* at 67.

11

distinction between this case and *Peters* is that, as discussed above, the jury did not acquit Young of the predicate murder in the second degree.

Missouri courts have continually found that "when a defendant is tried on a multiple count charge involving crimes with different elements, the jury's verdict does not have to be logically consistent." *State v. Ford*, 367 S.W.3d 163, 168 (Mo. App. W.D. 2012) (quoting *State v. Owens*, 270 S.W.3d 533, 540 (Mo. App. W.D. 2008)). "So long as the charge for which he is convicted is supported by sufficient evidence, logical inconsistency is not a ground for rejecting an individual verdict." *Ford*, 367 S.W.3d at 168. In *Ford*, the defendant was acquitted of stealing, but convicted of second degree burglary. *Id.* at 167. The Court noted that while the crimes were similar, they each had distinct elements, and it is entirely possible that the result was not necessarily illogical to the jury. *Id.* at 168. *See also State v. Byrd*, 389 S.W.3d 702 (Mo. App. E.D. 2012) (verdicts rejecting murder in the second degree in favor of involuntary manslaughter and convicting defendant of child endangerment was not inconsistent due to differing elements of the crimes).

Young argues that this is an "inconsistent" verdict and, pursuant to *State v. Zimmerman*, 941 S.W.2d 821 (Mo. App. W.D. 1997), the verdicts must be rejected and sent back to the jury for further deliberations. In *Zimmerman*, the jury returned verdict forms, which found the defendant not guilty on Count I and not guilty of Count II, and the court initially orally granted judgment accordingly and discharged the jury. *Id.* at 822. After the jury was discharged, it was discovered that the jury had also returned an instruction form along with the remaining instructions where they found the defendant guilty of a lesser-included offense under Count I. *Id.* The trial court proceeded to, over

12

the State's objection, enter a final judgment of acquittal on both charges. The not guilty verdict form on Count I did not specify that it was for the charged offense or was a finding of not guilty as to the charged offense and all lesser included offenses, it read "As to Count I, we, the jury, find the defendant Stephen N. Zimmerman not guilty." *Id.* at 823. The verdict was inconsistent because the defendant could not be both not guilty of Count I and guilty as to the same count. *Id.* at 823. This Court agreed and reversed and remanded for a new trial as to Count I only. *Id.* In *Zimmerman*, it was impossible for the Court to resolve or ignore the inconsistency because it could not enter both verdicts, therefore, a new trial was necessary. Here, as to Count I, the jury was given a single instruction finding the defendant not guilty as to Count I, but separate instructions for the jury to enter its findings as to guilt on the principal charge and each lesser included offense submitted. The jury did not sign the not guilty instruction as to Count I, but properly signed the guilty instruction as to the single lesser included offense of involuntary manslaughter.

In this case, although there may be an intellectual inconsistency--as there was in *Bratton*--the inconsistency does not prevent the verdict being entered and may easily be explained by jury compromise or lenity. We find *Zimmerman* distinguishable.

Young also argues that this case falls within an exception to the *Bratton* reasoning regarding logically inconsistent verdicts. Young contends that "where a finding of guilt on one count *depends on* the jury's verdict on another count" an inconsistent verdict must be reversed. *State v. Owens*, 270 S.W.3d 533, 540 (Mo. App. W.D. 2008). For example, in *Owens,* the defendant was charged with sodomy in the second degree and attempted victim tampering. *Id.* at 535. The jury found the defendant not guilty of sodomy but guilty of

13

attempted victim tampering.  *Id.* at 536.  On appeal, this Court vacated his conviction explaining that, given the nature of the victim tampering offense, a finding that the target was in fact the victim of an underlying crime was a dependent or "constituent element" of victim tampering.  *Id.* at 540 (quoting *State v. Staten*, 478 S.W.2d 265, 266 (Mo. 1972).  The fact finder must first determine that there is a victim before it can find that that victim was tampered with.  *Id.* (further noting that victim tampering and witness tampering at that time were different and separate offenses under the criminal code).  Similarly, in *Flemons*, the defendant sought plain error review of his unlawful use of a weapon conviction.  *Flemons*, 144 S.W.3d at 881.  The jury found him not guilty of possession of a controlled substance with the intent to distribute but guilty of the charge of unlawful use of a weapon.  *Id.*  The instruction for unlawful use of a weapon, however, required a finding that defendant used a weapon while "committing the offense of possession of more than five grams of marijuana with the intent to distribute, deliver, or sell."  *Id.* at 882.  This Court found that on its face the guilty verdict for unlawful use of a weapon was dependent on the jury determining that the defendant was guilty of the predicate offense of marijuana possession.  *Id.*

Young is incorrect that findings of guilt in Counts III and IV were dependent upon a finding a guilty as to murder in the second degree.  No element of Count III or IV required a finding of guilt as to murder, nor did any instruction requiring the jury to find that Counts III and IV could only be considered if Young was found guilty of murder in the second

14

degree.[5]  Unlike in *Owens* and *Flemons*, there was no clear acquittal of the predicate offense in this case.  It would be mere conjecture to find that by convicting on the lesser-included offense the jury found Young not guilty of unlawful use of a weapon.  While it would have been possible for the jury to enter a more logically consistent verdict, the jury instructions did not require such an outcome.  Instead, this case is more akin to *Bratton* because while the verdicts may be "somewhat intellectually inconsistent" it reflects the jury's compromise or lenity and does not require reversal.

We find that Young's substantial rights were not violated.  There was sufficient evidence to support his convictions on all the counts, but we presume that the jury exercised some compromise or lenity as to Count I.  The trial court did not err in accepting the jury's verdict and entering judgment accordingly.

## II.

Young's second point on appeal alleges that the trial court erred in accepting the jury's verdict as to Count III, unlawful use of a weapon, and Count IV, armed criminal action, because they violated his right to be free from double jeopardy.  Young contends that his acquittal as to murder in the second degree under Count I precluded the jury finding him guilty as to the compound offenses.

---

[5] Had the jury in this case found Young guilty of Murder in the Second Degree under Count I but not guilty of Unlawful Use of a Weapon under Count III, the verdict would have been inconsistent because the instruction for second degree murder under Count I required the jury to specifically find under paragraph "First," that Young "*committed unlawful use of a weapon as submitted in Instruction No. 19*."

## Standard of Review

"Whether an individual's right to be free from double jeopardy has been violated is a question of law, which this Court reviews *de novo*." *State v. Walker*, 352 S.W.3d 385, 387 (Mo. App. E.D. 2011) (citing *State v. Daws*, 311 S.W.3d 806, 808 (Mo. banc 2010)). However, the State contends that Young failed to raise this specific argument below and has thus has not preserved the issue for appeal. We agree.

"The double jeopardy clause 'contains two distinct protections for criminal defendants: (a) protection from successive prosecutions for the same offense after either an acquittal or a conviction and (b) protection from multiple punishments for the same offense.'" *Daws*, 311 S.W.3d at 808 (quoting *State v. Flenoy*, 968 S.W.2d 141, 143 (Mo. banc 1998)). The objection raised by Young in his pre-trial Motions to Dismiss contended that if convicted of both Count I, murder in the second degree, and Count III, unlawful use of a weapon, he would be subject to multiple punishments for the same crime in violation of his right to be free from double jeopardy. Additionally, in his Motion for New Trial, Young asserted that the jury's finding of guilt as to Counts III and IV and the lesser-included offense in Count I of involuntary manslaughter constituted being punished twice for the same crime. The issue raised on appeal argues that the jury's finding of guilt as to Counts II and IV were essentially successive prosecutions for the same offense because the jury had acquitted him of unlawful use of a weapon in Count I. While related, this is a distinct and separate argument not raised before the trial court. Even if not preserved, "if a double jeopardy claim is determinable from the face of the record, it is entitled to plain error review." *State v. Brandon*, 523 S.W.3d 476, 480 (Mo. App. E.D. 2016) (citing *State*

16

*v. Liberty*, 370 S.W.3d 537, 546 (Mo. banc 2012)). Under Rule 30.20, we will reverse only if there is manifest injustice or a miscarriage of justice as a result of the error.

**Discussion**

"A criminal defendant's right to be free from double jeopardy is derived from the Fifth Amendment of the United States Constitution and applies to the states through the Fourteenth Amendment." *State v. Reynolds*, 502 S.W.3d 18, 25 (Mo. App. E.D. 2016); U.S. CONST. amends. V and XIV. "The proper test for assessing whether successive prosecutions violate double jeopardy is the *Blockburger* test, also known as the 'same-elements' test." *Daws*, 311 S.W.3d at 808. Two charges constitute the same offense for double jeopardy purposes unless "each provision requires proof of a fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304 (1932). Article I, section 19 of the Missouri Constitution specifically protects against a defendant being retried for the same offense after acquittal. *State v. Johnson*, 245 S.W.3d 288, 293 (Mo. App. W.D. 2008).

Young contends that because he was "acquitted" as to the charge of murder in the second degree in Count I, which included the allegation that Young unlawfully used a weapon to shoot and kill Hutson, a subsequent finding of guilt as to unlawful use of a weapon and armed criminal action amounted to being retried for the same offense. We question the application of a successive prosecution claim's applicability to a single prosecution with multiple counts within the context of one trial. While murder in the second degree had within it the element of "unlawful use of a weapon" there were other elements not present in the elements of the crimes of unlawful use of a weapon or armed

17

criminal action making them factually distinct and, consequently, double jeopardy does not bar punishment for both.

More importantly, Young attempts to argue that by acquitting him of murder in the second degree, the jury must have found that he did not commit the offense of unlawful use of a weapon and thus when he was acquitted of the offense in Count I but found guilty of the same actions in the later Counts III and IV. As noted in greater detail above, this is an inaccurate account of what occurred. The jury need not have acquitted Young of murder in the second degree, much less the specific element of "unlawful use of a weapon," before it could consider the lesser-included offense of involuntary manslaughter.

Young contends that the issue presented in this case is one of first impression and there are no cases specifically addressing this question. Instead, Young relies on what he believes to be analogous cases from other jurisdictions. However, the cases cited by Young are cases of a retrial after acquittal in a prior trial. *E.g.*, *Wilson v. Czerniak*, 355 F.3d 1151 (9th Cir. 2004); *Ashe v. Swenson*, 397 U.S. 436 (1970); *Yeager v. United States*, 557 U.S. 110 (2009). These cases are easily distinguishable from this case in which there was no acquittal or retrial. Young was not acquitted of murder in the second degree by the jury's finding of guilt in a lesser included offense. Our Supreme Court has specifically held that,

> The second-degree murder jury instruction in Missouri, MAI-CR3d 314.04, is not an acquittal first instruction. *Wise*, 879 S.W.2d at 517. The instruction does not require the defendant to be found "not guilty" on the greater offense, first-degree murder, before the lesser-included offense, second-degree murder, is considered. *Id.* Instead, a lesser-included offense may be considered if the jury does "not find the defendant guilty of the greater offense." *Id.* Thus, a lesser-included offense may be considered when the jury is deadlocked on the greater offense. *Id*.

18

*State v. Johnson,* 284 S.W.3d 561, 574 (Mo. banc 2009).

Young's argument is premised entirely on the erroneous argument that the jury must have acquitted him of the greater offense before it considered the lesser included offense, thus it must fail. This was not a "retrial." Because Young's argument is based on a false premise, we need not address whether Young is correct in suggesting that the above cases may be applied to challenge successive counts in the same prosecution in addition to successive trials.

The circuit court did not err in overruling Young's motion to dismiss and otherwise accepting the jury's verdict of guilt as to Counts III and IV on double jeopardy grounds.

## III.

Young's final point on appeal alleges that the trial court erred in refusing to submit Young's proposed self-defense instructions based on his right to use deadly force to defend against an unlawful entry into his car because the evidence established that Young reasonably believed that Hutson was attempting to enter his car and assault him.

### Standard of Review

> The defendant claims error in failing to give a self-defense instruction. "This Court reviews *de novo* a trial court's decision whether to give a requested jury instruction." *State v. Jackson*, 433 S.W.3d 390, 395 (Mo. banc 2014); *accord State v. Comstock*, 492 S.W.3d 204, 205-06 (Mo. App. 2016). "The circuit court must submit a self-defense instruction 'when substantial evidence is adduced to support it, even when that evidence is inconsistent with the defendant's testimony,' [*State v. Westfall*, 75 S.W.3d 278, 281 (Mo. banc 2002)], and failure to do so is reversible error." [*State v. Smith*, 456 S.W.3d 849, 852 (Mo. banc 2015)]. "In determining whether the circuit court erred in refusing to submit an instruction on self-defense, the evidence is viewed in the light most favorable to the defendant." *Id*.

*State v. Bruner*, 541 S.W.3d 529, 534 (Mo. banc 2018) (internal footnote omitted).

19

**Discussion**

Following the close of State's evidence an extensive record was made regarding whether Young would elect to testify in his own defense. Young elected not to testify. On appeal, Young contends this was done, in part, based on the State's agreement that it would not object to the submission of a self-defense instruction based upon Young's assertion to Biagioli that Young shot at Hutson because he believed Hutson was aiming a gun at Young.[6] At trial, Young requested both self-defense instructions based on Young's assertion that Hutson had a gun but also based on the so-called "castle doctrine." The trial court did give the jury a general self-defense instruction but declined to give an instruction regarding the castle doctrine. On appeal, Young argues that he was also entitled to the second self-defense instruction based on the castle doctrine. Section 563.031.2(2) provides that a person may use deadly force upon another person "who unlawfully enters, remains after unlawfully entering, or attempts to unlawfully enter a dwelling, residence, or vehicle lawfully occupied by such person[.]"

To successfully inject the issue of self-defense, it must be supported by evidence. Section 556.061(3)(a). Young asserts that Hutson's chase of Young's vehicle, Hutson's attempt to bring his car alongside Young's car, along with some evidence that suggests the bumpers of the cars may have touched,[7] created an inference that Hutson had taken a

---

[6] This was done despite substantial witness testimony that there was not a gun in Hutson's vehicle. The four testifying bystanders on the scene testified that they never saw a gun in or around the Impala. Monroe testified that neither she nor Hutson had a gun. The police officer that responded to the scene testified that when he did a visual inspection of the car he did not see any weapons or ammunition. He also testified that Monroe did not have any weapons or ammunition.

[7] Biagioli testified that in relaying the events "I think [Young] said they bumped into the back of his car." Officers also testified that there may have been "slight" damage to the bumper of Young's car and that there was a "mark" on Hutson's front license plate and some gold paint missing from the front bumper. However, the jury also

20

substantial step to unlawfully enter Young's car to assault him. Even viewing the evidence in the light most favorable to the defendant, we disagree Young submitted sufficient evidence to support a submission of the castle doctrine. Even assuming that Hutson's bumper did hit Young's bumper, there was no testimony that there was ever an attempt, or even an opportunity, for Hutson to exit his car much less enter Young's. There may be a circumstance in which hitting another vehicle may give rise to a castle doctrine defense if it is done with sufficient force to stop the other vehicle to allow entry. However, there is no evidence that there was any intent or attempt to do so here, and, even assuming the vehicles did touch, the only evidence suggests that it was a minor impact. Because Young submitted no evidence to support a theory of self-defense under the castle doctrine, he was not entitled to receive such an instruction.

Young did receive a self-defense instruction based on Young's assertion to Biagioli that Hutson had first pointed a gun at Young and he feared for his life. The trial court did not err in declining to also give a self-defense instruction based on the castle doctrine, of which there was no evidence submitted.

### Conclusion

For the reasons stated above, we affirm.

_____
Gary D. Witt, Judge

All concur

---

heard testimony from Detective Donna Drake that paint samples of blue paint taken from Hutson's Impala were tested against Young's automobile and found that the blue paint did not come from Young's car. Monroe testified that the vehicles never touched.

21