

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

STATE OF MISSOURI, )
)
　　　　　　　Respondent, )
) WD86413
v. )
) OPINION FILED:
) June 3, 2025
AHMAD R. HERRING, )
)
　　　　　　　Appellant. )

**Appeal from the Circuit Court of Jackson County, Missouri**
**The Honorable Bryan E. Round, Judge**

**Before Division One:** Karen King Mitchell, Presiding Judge, and
Lisa White Hardwick and Mark D. Pfeiffer, Judges

Mr. Ahmad Herring ("Herring") appeals from the judgment of the Circuit Court of

Jackson County, Missouri ("trial court"), following a jury trial, which convicted him of

one count of felony murder, a related count of armed criminal action, one count of first-

degree kidnapping, one count of first-degree robbery, and a second related count of

armed criminal action. On appeal, Herring raises four claims of error—that verdicts for

four of the convictions were impermissibly inconsistent, that the crimes involving one

victim should have been severed from the crimes against another victim, and two claims of evidentiary error. We affirm.

## Factual and Procedural History[1]

On May 9, 2021, Herring visited the Ameristar casino to gamble. This was not Herring's only visit to Ameristar; in fact, Herring's total losses in 2021 amounted to $64,820.

The next day, on May 10, 2021, Herring called Victim 1,[2] who knew Herring only as an unnamed friend of a friend. Victim 1 thought it was unusual for Herring to call him because he had only been introduced to Herring once and had only once before spoken with him on the phone. Immediately after the call, Victim 1 received a string of texts and phone calls from strangers asking to meet about construction work and for other random reasons. The strangers claimed to have worked with a friend of Victim 1, the same friend who introduced Herring to Victim 1. The strangers "wouldn't take a no for an answer," so Victim 1 agreed to meet the next day.

Around 11 a.m. on May 11, 2021, Victim 1, traveling with his wife and young son, met the strangers at an address the strangers provided, which was an apartment building. A white Dodge Charger registered to Herring's mother followed the strangers'

---

[1] "On appeal from a jury-tried case, we view the facts in the light most favorable to the jury's verdict." *State v. Rouner*, 679 S.W.3d 141, 143 n.1 (Mo. App. W.D. 2023) (quoting *State v. Demark*, 581 S.W.3d 69, 73 n.2 (Mo. App. W.D. 2019)).

[2] Pursuant to the directive of section 509.520.1(4)-(5) (Supp. IV 2024), we do not use any victim or witness names in this opinion, other than parties to the underlying litigation. All other statutory references are to THE REVISED STATUTES OF MISSOURI (2016), as supplemented through March 1, 2021, unless otherwise indicated.

car into the parking lot. Three men wearing masks and carrying guns surrounded Victim 1's car and ordered him to step out of his car. They took two phones and a gun from Victim 1. The men then demanded more valuables, hit Victim 1 repeatedly, and tried to push him into their car. They gave up when Victim 1 fought back and his wife screamed, and the men got into their car, a silver Nissan. The white Dodge Charger and the Nissan left at the same time that Victim 1 left the scene.[3] As they were leaving, Victim 1's wife took a photo of the Dodge Charger. Victim 1 then drove to a nearby gas station because he was bleeding from his head and reported the events to a police officer who was at the gas station.

Between 1:04 p.m. and 1:11 p.m. that same day, Herring's white Kia drove by Victim 2's horse ranch three times. At 1:33 p.m., Herring received a call from R.L.[4] ("Co-Defendant") and drove past the ranch again. Sixteen minutes later, Co-Defendant's BMW pulled into Victim 2's driveway. At 1:52 p.m., Victim 2's friend, P.V., started to receive ransom calls from Victim 2's phone demanding $100,000 in exchange for Victim 2's return. In one of those subsequent calls, P.V. could hear Victim 2 yelling for him to call the police and then screaming in the background. Co-Defendant's BMW left the ranch at 2:02 p.m. A security camera on Victim 2's property showed a white Kia and then a BMW entering and leaving the property at different times on May 11, 2021.

---

[3] When Herring was later arrested on May 14, 2021, he was driving the white Dodge Charger.

[4] Herring possessed the phone used to call Co-Defendant when he was arrested. The phone's location data showed it near the ranch at 1:33 p.m.

After Victim 2's daughter was unable to reach her father by phone, she became worried and drove to the ranch, where she discovered her father's bloody clothes on the floor of the stables. Victim 2's daughter then contacted the police to report her father missing. Herring's Kia drove past the ranch twice more that afternoon, stopping after police arrived. Meanwhile, Victim 2's friend was unable to raise the money demanded and eventually contacted the police. Victim 2's friend, in speaking with the police, identified Herring as one of the two men he had seen on Victim 2's property sometime before May 11, 2021, when they were asking about buying a horse. Police investigation later identified Herring's DNA on evidence found at the stables.

The white Dodge Charger passed by the ranch the following morning. When Victim 1 learned the next day that Victim 2, a family friend who also knew Herring, was missing, he spoke with the police again because he thought the events could be related. Police were provided the photo that Victim 1's wife had taken of the Dodge Charger.

Three days later, on May 14, 2021, police had identified Herring's white Kia as having passed by the ranch multiple times in one day and began surveilling him. During the surveillance, police attempted to stop Herring, who was driving the Dodge Charger, but Herring led the police on a high-speed chase, which ended in his arrest for resisting a lawful stop. Police identified the Dodge Charger as the same vehicle depicted in the photo that Victim 1's wife had taken on May 11th, which police believed implicated Herring in the attempted kidnapping of Victim 1 and kidnapping of Victim 2.

In an inventory search of the Dodge Charger after the arrest, police found six cell phones and receipts for the purchase of three blue drop cloths, dated May 12, 2021, and

4

cleaning supplies that included bleach and ammonia, which had been purchased earlier on May 14, 2021. One of the phones contained a photograph of Victim 2's missing cell phone, dated May 11, 2021, at 7:05 p.m., and its call log showed the ransom calls made to P.V.

Victim 2's body was found six days after he went missing, on May 17, 2021. He was wrapped in two blue drop cloths that were consistent in nature to those reflected in the receipts found in the Dodge Charger. Victim 2 was wearing bleach-stained underwear. Victim 2 had been stabbed in the legs, chest, and head, and had been struck multiple times in the head and legs. Victim 2 was determined to have died at least forty-eight to seventy-two hours earlier from multiple sharp and blunt-force injuries.

Herring was charged with nine counts of criminal conduct in a single indictment: second-degree felony murder, first-degree kidnapping, first-degree attempted kidnapping, first-degree robbery, four counts of armed criminal action, and one count of abandonment of a corpse.

The State presented the above evidence at trial. Herring then rested without presenting any evidence. The jury found Herring guilty on five counts: second-degree felony murder, first-degree kidnapping, first-degree robbery, and two counts of armed criminal action. The abandonment-of-a-corpse charge was dismissed by the trial court, and Herring was found not guilty by the jury on the remaining charges. Herring was sentenced to life imprisonment on the felony-murder charge to be served concurrently with a sentence of ten years' imprisonment for the kidnapping conviction, ten years'

5

imprisonment on the robbery conviction, and a sentence of three years' imprisonment for each of the armed-criminal-action convictions.

Herring's motions for judgment of acquittal at the close of evidence and for new trial after the jury's verdict were denied. Herring appealed, raising four points on appeal. Herring requests plain error review for two of his points—that certain verdicts were inconsistent and that the admission of evidence related to a cell phone was improper. In his two other points, Herring challenges the court's refusal to sever certain counts and claims evidentiary error.

## Points I and III

Herring seeks plain error review of Points I and III. In Point I, Herring requests plain error review of his argument on appeal that the trial court erred by accepting guilty verdicts for kidnapping, felony murder, and armed criminal action pursuant to felony murder while also accepting a not-guilty verdict for armed criminal action pursuant to kidnapping because the verdicts were impermissibly inconsistent. In Point III, Herring requests plain error review of the admission of testimony by a police detective related to a cell phone found in Herring's car at the time of his arrest and the admission into evidence of "exhibits regarding a blurry photo" found on that cell phone.

## Standard of Review for Points I and III

Herring concedes that he failed to raise the objections he asserts on appeal in Points I and III before the trial court. Thus, he failed to properly preserve either point for appeal. *State v. Minor*, 648 S.W.3d 721, 729 (Mo. banc 2022) ("Only an objection made timely *at trial* will preserve an issue for appeal."). However, we may still exercise our

6

discretion to review his points for plain error. Rule 30.20.[5] To establish plain error, Herring must demonstrate "the claimed error facially establishes substantial grounds for believing that manifest injustice or miscarriage of justice has resulted." *State v. Onyejiaka*, 671 S.W.3d 796, 798 (Mo. banc 2023) (quoting *State v. Brandolese*, 601 S.W.3d 519, 526 (Mo. banc 2020)).

**Point I**

Herring has waived even plain error review relating to his claim of impermissibly inconsistent verdicts.

Where a defendant claims that verdicts are impermissibly inconsistent, the defendant is obligated to raise the issue before the jury is discharged so that the inconsistency can be resolved. *State v. Flemons*, 144 S.W.3d 877, 881 (Mo. App. W.D. 2004). Failure to present the claim before then waives the claim. *Id*. Moreover, a party has waived plain error review when "counsel has affirmatively acted in a manner precluding a finding that the failure to object was a product of inadvertence or negligence." *State v. Johnson*, 284 S.W.3d 561, 582 (Mo. banc 2009). "[P]lain error review is waived when [a] defendant affirmatively makes [a] strategic decision not to object" to the complained-of trial error. *State v. Shade*, 657 S.W.3d 282, 302 (Mo. App. W.D. 2022) (alteration in original) (quoting *State v. Rios*, 314 S.W.3d 414, 425 (Mo. App. W.D. 2010)).

---

[5] All rule references are to I MISSOURI COURT RULES - STATE 2024.

Here, Herring admits in his appellate brief to this Court that "[Herring] did not object prior to discharge of the jury out of concern that doing so would result in further findings of guilt resulting from a compromise verdict." Having admittedly made the strategic decision *not* to object to what Herring now claims are impermissibly inconsistent verdicts *before* the jury was discharged, Herring has waived even plain error review by this Court.[6]

Point I is denied.

---

[6] However, even if we were to review this claim for plain error, we would not reverse. Where multiple charges are submitted to a jury and the jury acquits on some and convicts on others, the verdicts are inconsistent only if the charges on which the defendant was acquitted did not require proof of any element unique to those crimes and distinct from the elements of the offense or offenses of which the defendant was found guilty. *State v. Ford*, 367 S.W.3d 163, 167 (Mo. App. W.D. 2012) (conviction of burglary and acquittal of stealing not inconsistent because crimes involved different elements and because neither crime was dependent on other offense of involuntary manslaughter).

Here, Herring's claimed error—that the jury's acquittal on the armed-criminal-action charge related to his kidnapping conviction necessarily means that he could not be guilty of felony murder through the use of a deadly weapon—itself is illogical. The jury's verdicts were not logically inconsistent because they required different findings by the jury. The armed-criminal-action charge for Count II was based on felony murder, while the armed-criminal-action charge in Count IV was based on kidnapping. To convict Herring on Count II, the jury had to find that Victim 2 was "killed by being stabbed and suffering blunt force trauma" with the "knowing use or assistance or aid of a deadly weapon" while a conviction on Count IV required the jury to find that Victim 2 was "unlawfully confined" through the use of a deadly weapon. It is an entirely logical conclusion that jurors could have found that a deadly weapon was used to kill Victim 2 sometime before Herring was arrested on May 14, 2021, but not to secure his unlawful confinement on May 11, 2021. *See State v. McGee*, 284 S.W.3d 690, 710 (Mo. App. E.D. 2009) (guilty verdicts on both second-degree robbery and impersonating a police officer were not inconsistent as different means used to accomplish multiple crimes in the same course of conduct were not mutually exclusive). Where verdicts are not inconsistent, "this Court will not presume to delve into the collective mind of the jury and create an inconsistency where one need not exist." *Ford*, 367 S.W.3d at 168.

**Point III**

In the first instance, it is unclear from Herring's appellate brief whether Herring claims that the trial court erred by admitting into evidence Exhibit 409, the blurry photo referenced in Herring's third point on appeal. Though Herring's brief asserts, without citation to the record, that an objection was made at trial to the photograph and to the detective's testimony as to what the photograph depicts, the record belies this assertion. In fact, Herring's counsel affirmatively stated "no objection" when Exhibit 409 was offered and admitted at trial along with the other images downloaded from Herring's cell phone—Exhibits 412, 413, and 414.

While this Court's review, if any, is for plain error under Rule 30.20 when a party does not object to evidence at trial, *State v. Paine*, 631 S.W.3d 691, 694 (Mo. App. W.D. 2021), plain error review is unavailable when a party affirmatively states that it has no objection to evidence offered by an opposing party. *Johnson*, 284 S.W.3d at 582. By affirmatively stating "no objection" to Exhibit 409 and the other related exhibits offered at the time, Herring has waived plain error review of the admission of that photo, as well as to the other images from Herring's cell phone that were admitted without objection. Consequently, it is only testimony *about* Exhibit 409 that we undertake our plain error review.

Herring's counsel did not object at any point during the police detective's testimony about Exhibit 409 or, for that matter, at any point during the detective's entire testimony regarding the exhibits admitted during the detective's testimony, which occurred over two days of the trial. Now, however, Herring's complaints *appear* to be

9

twofold: (1) that testimony by a police detective was improper opinion testimony which lacked foundation and invaded the province of the jury and (2) that no evidence directly tied the cell phone on which the image was found to Herring, which according to Herring's appellate brief argument—"required the jury to make multiple assumptions."

Plain error review is discretionary when a failure to object at trial is due to inadvertence or neglect. *State v. Donnell*, 695 S.W.3d 298, 300 (Mo. App. W.D. 2024) (citing *Johnson*, 284 S.W.3d at 582). Plain error analysis has two prongs. *State v. Barnaby*, 91 S.W.3d 221, 225 (Mo. App. W.D. 2002). First, the court must determine whether the trial court committed an error that was "evident, obvious, and clear." *Brandolese*, 601 S.W.3d at 531. Second, the court must determine whether the error resulted in manifest injustice or a miscarriage of justice. *Id*. Neither of Herring's complaints demonstrate that the trial court committed error that was evident, obvious, and clear or that the claimed error actually resulted in manifest injustice or a miscarriage of justice.

Testimony at trial included the following: Police recovered a phone with a number ending in 6793 from the Dodge Charger that Herring was driving at the time of his arrest. The State admitted into evidence, without objection, the phone records associated with that number. The detective witness personally reviewed data extracted from the 6793 phone, which included a deleted photograph of the screen of another cell phone—the photo that was admitted at trial without objection as Exhibit 409. The photograph, taken on the evening of the day that Victim 2 was kidnapped, had a FaceTime icon and a Cricket service provider. The photograph depicted a call log with a

10

contact bearing the first name, among other identifying information, for Victim 2's friend who received ransom calls from Victim 2's phone on the day of Victim 2's kidnapping. The date of the call log said "hoy," i.e., "today."

The police detective testified, without objection, that the phone screen depicted in Exhibit 409 belonged to Victim 2:

Q.      And do you know whose phone it was taking a picture of?

A.      [Victim 2]'s.  He had a Cricket phone.  We concluded it was an iPhone because of the FaceTime and that call log corresponds with [Victim 2's] call log.

Q.      Does it correspond with what [Victim 2's friend] told you . . . happened too?

A.      Yes, that he received several calls.

Twenty-three witnesses earlier,[7] Victim 2's friend had testified about the ransom calls he received from Victim 2's phone number, and according to the detective witness, the calls shown on the call log pictured in Exhibit 409 matched the ransom calls that Victim 2's friend received.  Although they had not been published to the jury when the police detective testified, the State also entered into evidence the phone records for the phone owned by Victim 2, as well as the phone records of Victim 2's friend.

In addition to the fact that the phone ending with the number 6793—the phone from which the photos were recovered—was found in the Dodge Charger that Herring was driving at the time of his arrest, the jury was also presented with testimony that cell

---

[7] In all, the State presented thirty-four witnesses and hundreds of exhibits during Herring's six-day trial.

11

phone location data showed that the 6793 phone was near Victim 2's and Co-Defendant's phones on May 11, 2021. The police detective also testified about calls between the 6793 cell phone and Herring's Co-Defendant on that same date.

In closing argument, the State did not argue that Exhibit 409 depicted Victim 2's phone based on the *police detective's* belief. Rather, the State argued that Exhibit 409 depicted Victim 2's phone because the contact name on Exhibit 409 matched the name of Victim 2's friend and because the phone records for the friend's phone matched the call log shown in Exhibit 409. In deliberations, the jury asked to see Exhibit 409.

We do not find that the trial court committed error by permitting this testimony that was not objected to. First, insisting upon *sua sponte* action by the trial court has "been rejected in all but the most unusual circumstances." *State v. Roper*, 136 S.W.3d 891, 902 (Mo. App. W.D. 2004). Such "uninvited interference" by the trial judge "risks injecting the judge into the role of a participant and invites trial error." *Id*. Often, *sua sponte* intervention will interfere with matters of trial strategy. *State v. Messer*, 207 S.W.3d 671, 675 (Mo. App. S.D. 2006) (strategic decisions—such as counsel's choosing not to object to avoid aggravating the jury or directing attention to testimony—"do not entitle a party to forego objecting at trial and then appeal to this court for relief if they lose"). Consequently, appellate courts rarely find plain error for failure to take *sua sponte* action at trial. *Roper*, 136 S.W.3d at 903.

Second, trial courts have wide discretion in admitting lay-witness testimony into evidence. *State v. Campbell*, 26 S.W.3d 249, 253 (Mo. App. W.D. 2000). It is true that when the jury is "as capable as the witness to draw conclusions from the facts," opinion

testimony is generally excluded. *State. v. Gardner*, 955 S.W.2d 819, 823 (Mo. App. E.D. 1997). However, a lay witness may "provide an opinion if the witness possesses knowledge that is not available to the jury and that would be helpful to the jury to determine a disputed issue." *State v. Ratliff*, 622 S.W.3d 736, 746 (Mo. App. W.D. 2021) (quoting *State v. Hutson*, 487 S.W.3d 100, 107-08 (Mo. App. W.D. 2016)). The question is: can the jury be "fully equipped, by the mere recital of the data, to draw inferences?" *State v. Davidson*, 242 S.W.3d 409, 413-14 (Mo. App. E.D. 2007). Specifically, a witness's opinion "as to [the] identity of things" is admissible "when resting on facts within the knowledge of the witness." *State v. Gilyard*, 559 S.W.2d 610, 611 (Mo. App. 1977) (citing *State v. James*, 92 S.W. 679, 682 (Mo. 1906); *State v. McGee*, 83 S.W.2d 98 (1935)). Further, opinions, conclusions, or inferences that describe a witness's comprehension of her personal observation may be a "practical and convenient 'short-hand rendition' of a composite situation." *State v. Sander*, 682 S.W.3d 85, 97 (Mo. App. W.D. 2023); *accord State v. Strong*, 142 S.W.3d 702, 716 (Mo. banc 2004); *Davidson*, 242 S.W.3d at 414.

The police detective witness identified the phone pictured in Exhibit 409 based on facts within her knowledge. She analyzed the data downloaded from the 6793 phone, and she compared Victim 2's phone records to the call log, service, provider, and phone brand. She connected the contact name on the call log with the friend of Victim 2 who had received ransom calls and compared the friend's phone records with the calls shown on the call log. The police detective's testimony contextualized that evidence and equipped the jury to come to its own conclusion. The jury lacked the detective's

familiarity with the nuanced information identifying the phone, and at the time of her testimony, the jury had not yet seen the actual phone records. The significance of those details may have been lost on jurors amidst days of evidence without knowing why they were significant to the detective. The detective's testimony, then, was "practical and convenient short-hand" for her comprehension of the identity of Exhibit 409 based on composite information. Even though the detective was unable to personally examine Victim 2's phone and had "never discussed the phone entries with [Victim 2]," her testimony as to the identity of Exhibit 409 rested on far more than a simple physical comparison of the photo and Victim 2's phone. Accordingly, there was sufficient foundation for the police detective's testimony regarding the contents of Exhibit 409, and her opinions did not invade the province of the jury.[8]

On a related note, Herring complains that there was no direct evidence tying him to the 6793 phone, "which required the jury to make multiple assumptions." This argument is equally unavailing. For, "[t]he State may prove its case by presenting either direct *or* circumstantial evidence connecting the defendant to each element of the crime."

---

[8] The only legal authority Herring cites in his brief for support of his argument is a general reference to a discussion found on pages 904-05 of *In re J.R.*, 633 S.W.3d 899 (Mo. App. E.D. 2021); Herring provides no argument of how he connects that case to this case. It is Herring's obligation—not the Court's—to explain how the principles of law interact with his claim of error. *See Hicks v. Saint Luke's Northland-Smithville*, 655 S.W.3d 641, 649 (Mo. App. W.D. 2022). Moreover, this Court cannot complete Herring's argument for him. *See id.* ("We cannot complete Hicks' arguments for her. 'It is not our duty or responsibility to spend judicial time searching through the argument portions of briefs in an attempt to interpret the thrust of [Appellants'] contentions.'" (alteration in original) (quoting *Carroll v. AAA Bail Bonds*, 6 S.W.3d 215, 218 (Mo. App. S.D. 1999))).

*State v. Howell*, 143 S.W.3d 747, 752 (Mo. App. W.D. 2004) (emphasis added).

Circumstantial evidence is given the same weight as direct evidence. *See State v. Grim*, 854 S.W.2d 403, 407-08 (Mo. banc 1993) (rejecting a higher standard of review for cases based solely on circumstantial evidence). Not only did the State present evidence showing that the location of the 6793 cell phone corresponded with the location of Herring's vehicle during the course of the crimes, the 6793 phone was found in the car Herring was driving at the time of his arrest. This evidence was sufficient for the jury to infer that connection and, considered with the other evidence connecting Herring to the crimes of which he was convicted, was sufficient to support those convictions.

Point III is denied.

## Point II

In Point II, Herring asserts error due to the trial court's denial of his motion to sever Counts V through VIII, pertaining to Victim 1, from Counts I through IV and IX,[9] pertaining to Victim 2—arguing that the jury may have been tempted to determine guilt based not on the evidence of each offense but instead on either an assumption that guilt for offenses against one victim indicated guilt of offenses for the second or created an overall impression that Herring was a "bad person."

### Standard of Review for Point II

Review of the denial of a motion to sever requires a two-part analysis. *State v. Meder*, 870 S.W.2d 824, 828 (Mo. App. W.D. 1993) (citing *State v. Harris*, 705 S.W.2d

---

[9] At the close of evidence, the trial court dismissed Count IX because of insufficient evidence.

544, 547 (Mo. App. E.D. 1986)). This Court first considers whether the offenses were properly joined. *Id.* If joinder was proper, we then consider whether the trial court abused its discretion by denying the motion to sever. *Id.* Whether joinder of charges was proper is a question of law and is reviewed *de novo*. *State v. McKinney*, 314 S.W.3d 339, 341 (Mo. banc 2010). If joinder was proper, "severance is a decision left to the trial court's sound discretion," and the trial court's decision will be reversed only if it abused its discretion and there is a clear showing of prejudice. *Id*. at 342.

### Analysis of Point II

As a preliminary matter, we address the arguments Herring did *not* present to the trial court at the time Herring moved to sever his claims but presented *after* the trial and on appeal. In his motion for new trial and in his appellate brief, Herring alleges additional reasons that denying severance resulted in prejudice: that the use of a weapon in Victim 1's kidnapping unduly influenced the jury as to offenses against Victim 2 and that the cumulative and violent evidence was substantially and intentionally prejudicial.

To the extent that Herring seeks to have the trial court's ruling on his motion to sever declared erroneous based on arguments he did *not* present to the trial court until *after* trial, those arguments are not preserved for appeal. *State v. Jones*, 662 S.W.3d 204, 210 (Mo. App. S.D. 2023) (where defendant's arguments on appeal claiming error from trial court's denial of motion to sever were not raised in his motion before the trial court, defendant has not preserved the arguments for review). Here, the same is true. These arguments were not presented to the trial court in Herring's motion to sever, and Herring has not requested plain error review of those topics on appeal. Consequently, we will

16

only consider Herring's preserved arguments that were made to the trial court below in his motion to sever.

In a criminal case, liberal joinder of connected claims is favored to achieve judicial economy. *State v. Collins*, 527 S.W.3d 176, 182 (Mo. App. W.D. 2017); *McKinney*, 314 S.W.3d at 341 ("Liberal joinder of criminal offenses is favored."). Offenses are properly joined if they are of the "same or similar character," if they involve acts that are "part of the same transaction" or "connected" transactions, or if they "constitute parts of a common scheme or plan." Rule 23.05; § 545.140.2. Joinder is proper if any of these criteria apply. *McKinney*, 314 S.W.3d at 341.

"'Connected' has its ordinary meaning and includes 'united . . . by dependence or relation, or by order in a series' and 'joined or linked together [in] a series, having the parts or elements logically related.'" *Collins*, 527 S.W.3d at 182 (alteration in original) (omission in original) (quoting *State v. Smith*, 389 S.W.3d 194, 209 (Mo. App. S.D. 2012)). Similarities in the manner the offenses were committed, as well as similarities in time, location, and motive, may demonstrate that charges are connected. *McKinney*, 314 S.W.3d at 341. Similarity does not require these characteristics be identical; rather, it is sufficient if the characteristics "resemble or correspond with each other." *State v. Scott*, 548 S.W.3d 351, 359 (Mo. App. E.D. 2018).

Charges also may be connected by police investigation and the evidence obtained as a result of those investigations. *Id.* at 363 (citing *State v. Forister*, 823 S.W.2d 504, 511 (Mo. App. E.D. 1992) ("[T]he evidence establishing defendant's participation in

each of the four crimes is so intertwined that a complete picture of the investigation of any of the offenses could not be presented without mention of the others.")).

Joinder was proper here because Herring's offenses against Victim 1 and against Victim 2 were part of connected transactions and a common scheme. Herring had a single and continuing motive: financial extortion. Both sets of charges involved violent assaults and demands for money or valuables. The attacks were linked in time and place, occurring successively on May 11, 2021, in the Kansas City metropolitan area. Herring targeted two Mexican immigrants he had met through an acquaintance. He used the same tactic with each, baiting them with false business dealings. In both instances, Herring did not participate directly in the attacks but remained nearby while third parties ambushed the victims. Police recognized these logically related elements and integrated the investigations under the police detective witness who testified at length at trial about the two crimes. Moreover, phone, car, and location evidence from May 11, 2021, connected Herring to each attack. The overlap in motive, methods, victims, and evidence all establish these were "connected" transactions that were properly joined under Rule 23.05 and section 545.140.[10]

---

[10] Herring cites *State v. St. George*, 497 S.W.3d 308, 311 (Mo. App. S.D. 2016) for support of his claim that the category of crime shared no "general likeness." In *St. George*, the Southern District held that joinder was proper because the two sets of crimes—(1) burglary and theft related to his breaking into mother's business and his mother's home to steal money and (2) identity theft and forgery related to the use of his brother's identity in obtaining large sums of money—each had a financial motive, were of a similar nature, and were all committed against similar family victims. *St. George*, 497 S.W.3d at 312. We find, however, that the facts of *St. George* are largely analogous with the facts here—the crimes involved the same financial motive, were of a similar nature, and were committed against similar victims.

"The key question in determining whether severance should be granted is one of prejudice." *State v. Chambers*, 234 S.W.3d 501, 509 (Mo. App. E.D. 2007). A defendant seeking severance of offenses must "make[] a particularized showing of substantial prejudice if the offense is not tried separately." Rule 24.07(b). Substantial prejudice must be "actually existing or real and not one which is merely imaginary, illusionary or nominal." § 545.140.3. That a jury regards a defendant facing several charges with "a more jaundiced eye" does not establish a particularized showing of substantial prejudice. *State v. Love*, 293 S.W.3d 471, 477 (Mo. App. E.D. 2009) (citing *State v. Bechhold*, 65 S.W.3d 591, 596 (Mo. App. S.D. 2002)). Neither does "the general allegation that the jury would likely consider evidence of guilt of one charge as evidence of guilt of another charge." *Id*. (citing *Chambers*, 234 S.W.3d at 509). That some evidence would be admissible as to certain charges but not others, therefore, does not mandate severance. *Id*. (citing *Chambers*, 234 S.W.3d at 509).

The trial court did not abuse its discretion in denying severance because Herring failed to make a particularized showing of substantial prejudice. His pre-trial arguments—that, tried together, the jury might assume "that if it happened once, it happened again," or be tempted to determine guilt "based upon the overall impression that Mr. Herring is a 'bad person'"—were nothing more than illusionary and nominal claims of prejudice that have been rejected by Missouri courts. *See id.* (substantial prejudice not shown where defendant asserted that joinder allowed jury to hear otherwise inadmissible evidence of other crimes); *State v. Conley*, 873 S.W.2d 233, 238 (Mo. banc 1994) ("Severance of jointly charged offenses is not mandated merely because evidence

19

relating to one count would not be admissible in the trial of a second count if the two were tried separately."); *State v. Boyd*, 659 S.W.3d 914, 923 (Mo. banc 2023) (no substantial prejudice shown where defendant claimed severance was necessary because evidence on charge of statutory sodomy involving one victim might make a finding of guilt likely on other charges of statutory sodomy and child molestation involving two other victims); *Collins*, 527 S.W.3d at 184-85 (assertion that evidence related to charges involving sodomy were so prejudicial that those charges created "unreasonable risk" that jury would convict defendant on possession charge did not demonstrate prejudice justifying severance).

Moreover, the jury verdicts demonstrate that Herring was not prejudiced by the trial court's refusal to sever the charges. "The jury's decision to acquit a defendant of one count, while convicting him of the other counts[,] is indicative of the jury's ability to distinguish evidence and apply the law to each count separately." *Chambers*, 234 S.W.3d at 509. Here, the jury demonstrated that it could apply the evidence to each separate charge by convicting Herring of armed criminal action related to the felony murder of Victim 2 while finding Herring not guilty of armed criminal action related to the robbery of Victim 1 and by convicting Herring of the kidnapping of Victim 2 but not the attempted kidnapping of Victim 1. The record simply does not support Herring's claim that jurors were unduly influenced by the violent and cumulative nature of the evidence or by the use of a gun in the robbery of Victim 1.

Point II is denied.

20

**Point IV**

In his final point on appeal, Herring claims that the trial court erred in admitting, over objection, evidence of a high-speed car chase involving Herring, which culminated in his arrest on May 14, 2021, because Herring had already been convicted of the crime related to the chase and because the prejudice to Herring as a result of the admission of this evidence outweighed any substantive value to the jury.

**Standard of Review for Point IV**

A trial court's discretion regarding the admission of evidence will be reversed only upon a finding of abuse of discretion. *State v. Simmons*, 944 S.W.2d 165, 178 (Mo. banc 1997). An abuse of discretion does not occur unless the decision is "so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *State v. Mills*, 687 S.W.3d 668, 675 (Mo. banc 2024) (quoting *Brandolese*, 691 S.W.3d at 533). Moreover, a "trial court's admission of irrelevant and immaterial evidence, even of other crimes, will not be reversed on appeal absent a showing of prejudice." *Simmons*, 944 S.W.2d at 178 (citing *State v. Ellis*, 853 S.W.2d 440, 445 (Mo. App. E.D. 1993)). An appellate court will not reverse unless "there is a reasonable probability that the error affected the outcome of the trial or deprived the defendant of a fair trial." *State v. Wood*, 534 S.W.3d 566, 574 (Mo. banc 2019).

**Analysis of Point IV**

The specific evidence initially objected to by Herring was police officer testimony that the Dodge Charger identified by Victim 1 in the attempted kidnapping of Victim 1 on May 11, 2021, was the same vehicle in which Herring was arrested after a high-speed

21

police chase on May 14, 2021.  Defense counsel objected because the car chase was charged as a separate crime.[11]  The trial court overruled Herring's objection, finding that the evidence was "germane to the case" and "[went] to state of mind."  Later in the trial, the State informed the trial court of its intent to introduce the dash-cam footage of the car chase and Herring's arrest, to which defense counsel objected:

> [Defense counsel]:   [M]y objection is to the narrative of the stop.
>
> . . . .
>
> [Defense counsel]:   Well, my objection to the narrative is that one, that he is a bad guy or that he is armed and dangerous is supposition and they don't know that.  It's also prejudicial, Your Honor.
>
> The Court:    Prejudicial how?  They don't just go on a high-speed pursuit with anybody.  They've got to have a reason to do it.
>
> [Defense Counsel]:  And I'm not saying they didn't.  I'm objecting to the high-speed chase for the same reason I did previously.  The evidence in the high-speed chase—it was charged as a separate crime, not part of this.  It was charged as a separate crime, and he pled guilty to it.  And if they wanted it to be a part of this, they should have added it all together just like they did the kidnapping that they alleged is all be part and parcel.  That's the first thing.  But the second thing is, Your Honor, there is no allegation that he had a gun.  And they are saying in the video that [he] is armed and dangerous.  They don't know that.

The trial court overruled the objection to admission of the video of the chase but *sustained* defense counsel's objection to audio referring to Herring as "armed and dangerous."  After the State edited the video accordingly and offered the dash-cam footage, Herring's counsel stated, "Subject to previously stated [objections], I have no other objections."  After the video was admitted as Exhibit 163 through the testimony of

---

[11] Herring was charged with and pleaded guilty to a Class E felony of resisting a lawful stop in a separate criminal matter.

a tactical response team officer, defense counsel did not request a continuing objection or object when the tactical officer testified about the car chase. And when the State later asked to play Exhibit 163 for the jury, defense counsel stated, "No objection, Your Honor."

Defense counsel subsequently elicited evidence from the police detective witness that police had identified Herring as a person of interest in Victim 2's kidnapping and were surveilling him and that it was this surveillance that resulted in the high-speed car chase and Herring's arrest for resisting a lawful stop. During her cross-examination of the police detective witness, defense counsel asked over a dozen questions about why police were following Herring and why they had not tried to talk to him first. The State had not mentioned Herring's car chase during its direct examination of the police detective but asked four questions about it on re-direct, including how fast Herring was driving and how long the pursuit lasted. The State made one passing comment about the car chase during closing argument. The jury did not request the dash-camera footage or anything else relating to Herring's car chase during deliberations.

The trial court did not abuse its discretion in admitting into evidence Exhibit 163, the dash-cam video, or in admitting testimony about the high-speed chase; and Herring has not established prejudice as a result of the admission of this evidence. "Evidence must be logically and legally relevant to be admissible." *State v. Prince*, 534 S.W.3d 813, 817 (Mo. banc 2017). "Evidence is logically relevant if it tends to make the existence of a material fact more or less probable." *Id*. (quoting *State v. Collings*, 450 S.W.3d 741, 756 (Mo. banc 2014)). Herring does not argue that the high-speed car chase

lacks logical relevance. To determine legal relevance, the court weighs the evidence's probative value against its risk of unfair prejudice. *Id.* at 818. Comparing the evidence's legitimate probative value to its prejudicial effect is generally deferred to the trial court because it is in the best position to make the evaluation. *State v. Kenley*, 693 S.W.2d 79, 81 (Mo. banc 1985).

The admission of evidence of Herring's flight from police was relevant to show his state of mind in relation to the charged crimes. Evidence of flight is admissible to show a defendant's consciousness of guilt. *State v. Hosier*, 454 S.W.3d 883, 895-96 (Mo. banc 2015). The methodology of flight is probative of the quality and depth of defendant's consciousness of guilt. *State v. Denham*, 686 S.W.3d 357, 372 (Mo. App. W.D. 2024). "Flight may occur from the scene of the crime or elsewhere if it is in order to avoid arrest or prosecution." *State v. Moyers*, 266 S.W.3d 272, 284 (Mo. App. W.D. 2008) (citing *State v. Cotton*, 621 S.W.2d 296, 300 (Mo. App. E.D. 1981)). Remoteness in time and space of flight goes to the weight of the evidence, not its admissibility. *Id.* at 284; *State v. Culpepper*, 505 S.W.3d 819, 831 (Mo. App. S.D. 2016) (holding evidence of defendant's flight from officers three weeks after shooting at different location was admissible to prove defendant's consciousness of guilt).

Here, Herring fled upon noticing police following him three days after the crimes occurred. The evidence provided no alternative explanation for Herring's flight, nor does Herring offer one. The jury could reasonably find that Herring fled because of his involvement in the crimes against Victim 1 and Victim 2—the latter especially in light of the evidence recovered from the car at the time of Herring's arrest. Furthermore,

24

Herring's choice to evade police at speeds as high as 130 miles per hour in substantial traffic—ending only when "stop sticks" were deployed to force Herring's car to a stop—was "highly probative" of the quality and depth of his guilty state of mind. *See State v. Pool*, 674 S.W.3d 173, 180 (Mo. App. E.D. 2023) (chase reaching 120 miles per hour highly probative as to quality and depth of defendant's consciousness of guilt).

That police had no contact with Herring prior to the chase is irrelevant to its admissibility here to show Herring's mental state. *See State v. Davidson*, 521 S.W.3d 637, 644 (Mo. App. W.D. 2017) (holding that evidence of flight admissible where officer does not know identity of defendant but defendant fled upon contact with officer); *State v. Scott*, 687 S.W.2d 592, 593 (Mo. App. E.D. 1985) (flight evidence admissible where defendant fled when he saw officer "looking toward him").

Evidence of the chase was also relevant in providing the jury a clear and coherent picture of the events that transpired surrounding surveillance of Herring, his arrest, and the search of his car. While evidence of other crimes generally is not admissible, other crimes evidence can be admitted "to show the circumstances or the sequence of events surrounding the offense charged and to help present a complete and coherent picture of the events that transpired." *State v. Skillicorn*, 944 S.W.2d 877, 886-87 (Mo. banc 1997), *overruled on other grounds by Joy v. Morrison*, 254 S.W.3d 885, 855 (Mo. banc 2008) (internal citations omitted); *see also State v. Loper*, 609 S.W.3d 725, 738 (Mo. banc 2020) ("[O]therwise inadmissible evidence can become admissible if its purpose is to explain subsequent police conduct." (citing *State v. Shockley*, 410 S.W.3d 179, 194 (Mo. banc 2013))). Specifically, police can testify to their observations during surveillance.

*See State v. Davis*, 806 S.W.2d 441, 443 (Mo. App. E.D. 1991) (drug sale while surveilled established *res gestae* of possession charge). And, presenting the evidence to explain the entire investigation ensures that jurors are not "called upon to speculate on the cause or reasons for the officers' subsequent activities." *State v. Brooks*, 618 S.W.2d 22, 24-25 (Mo. banc 1981) (officer testimony about informant's observations of defendant's drug activity admissible to show reasons for officer's surveillance of defendant's house).

In this case, Herring's flight from police happened during surveillance for the charged crimes, and it resulted in additional evidence of the charged crimes. Not only do the surveillance observations provide a complete picture of the investigation, evidence of the chase also provided an important explanation for other evidence at trial. The State presented evidence of cleaning supplies and cell phones found in Herring's impounded car as well as jail calls from May 2021 when Defendant was in custody for resisting a lawful stop.[12] The State was not required to sift through the evidence to inform the jury of the surveillance, the car evidence, and the jail calls without mentioning what happened in between. That would invite speculation by the jury as to the results of the surveillance, the legitimacy of the car search, and the basis for Herring's incarceration.

Finally, Herring has failed to demonstrate prejudice from the admission of this evidence. Herring's only bases for alleging unfair prejudice are that the car chase was charged as a separate crime and that it allowed the State to argue that it showed consciousness of guilt. These are *proper* uses of the disputed testimony and do not

---

[12] While Herring was in jail after his arrest for resisting a lawful stop, he made phone calls to Co-Defendant and his sister that the State played for the jury at trial.

demonstrate unfair prejudice.  Moreover, Herring offers no allegation of outcome-determinative prejudice beyond the alleged error itself.  To warrant reversal, the defendant must demonstrate that evidentiary error resulted in prejudice.  *Prince*, 534 S.W.3d at 818.  The test is outcome-determinative prejudice, meaning that the evidence "so influenced the jury that, when considered with and balanced against all of the evidence properly admitted, there is a reasonable probability that the jury would have reached a different conclusion but for the erroneously admitted evidence."  *State v. Barriner*, 34 S.W.3d 139, 150 (Mo. banc 2000).  Here, there is no reasonable probability that the jury would have acquitted Herring of kidnapping, murder, robbery, or armed criminal action absent evidence of the high-speed car chase.

The trial court did not abuse its discretion in overruling Herring's objections to evidence regarding Herring's flight from police surveillance on May 14, 2021.

Point IV is denied.

## Conclusion

The trial court's judgment and Herring's corresponding convictions are affirmed.

_____
Mark D. Pfeiffer, Judge

Karen King Mitchell, Presiding Judge, and Lisa White Hardwick, Judge, concur.